**UNITED STATES of America,**
**Plaintiff,**

v.

**David R. SCHRIMSHER, Defendant.**

**In re Charles D. BUTTS, Attorney at Law, Appellant.**

**No. 73-1061.**

United States Court of Appeals,
Fifth Circuit.

May 3, 1974.

See also, 5th Cir., 493 F.2d 848.

---

Fred A. Semaan, Shirley W. Butts, San Antonio, Tex., for appellant.

Thomas G. Sharpe, Jr., Brownsville, Tex., amicus curiae, for Texas Crim. Defense Lawyers Association.

William S. Sessions, U. S. Atty., James W. Kerr, Jr., Asst. U. S. Atty., San Antonio, Tex., for plaintiff.

Before RIVES, GEWIN and RONEY, Circuit Judges.

RIVES, Circuit Judge:

During the course of a criminal trial in the Western District of Texas, the court found defense attorney Charles D. Butts in contempt of court, and ordered him incarcerated for two hours. Butts in this action appeals from the summary order of the district court. We reverse.

## I.

The transcript of what occurred immediately before the judge found Butts in contempt is reproduced in an appendix to this opinion. At about 11:30 A. M. on December 7, 1972, during the cross-examination of a prosecution witness, Butts showed the witness a color photograph. The judge asked Butts to mark the photograph as an exhibit. When Butts indicated that he did not want to do so, the judge interrupted Butts and insisted that the photograph be marked. Butts offered to comply, but did so in a manner considered argumentative by the judge. An exchange between Butts and the judge ensued. The judge retired the jury. After the jury left the courtroom, the judge and Butts again became embroiled in argument. Finally, the judge ordered the marshal to put Butts in jail, and to keep him there until 1:30 P.M. The marshal followed the court's instructions.

After Butts was removed from the courtroom, the judge entered the following order, entitled "Order Committing Charles D. Butts for Contempt of Court":

"On this the 7th day of December, 1972, the Court, in the exercise of its discretion, finds that Charles D. Butts, an Officer of the Court and attorney representing the defendant herein, is in such contempt of its authority as evidenced from the record herein as to amount to misbehavior of such officer in the presence of this Court or so near thereto as to obstruct the administration of justice; further, that said Charles D. Butts, as evidenced by the record, has shown such disobedience or resistance to the orders, rules and commands of this Court as to amount to a summary contempt of its authority committed in the presence of the Court in violation of 18 U.S.C. § 401(1)(3); that as punishment for such summary contempt the Court finds that the said Charles D. Butts should be committed to the custody of the United States Marshal and placed in jail until 1:30 p. m. this date, when the Marshal shall return him to this Court for a continuance of the trial herein. That the contempt hereinabove described is an accummulation [sic] of remarks of counsel made during the absence of the jury and is confined to such acts of contempt as were committed by the said Charles D. Butts in the absence of the jury."

(Supp.Rec.)

## II.

The government argues that because Butts has served his sentence of confinement under the district court's order, his appeal is moot. It is true that in St. Pierre v. United States, 1943, 319 U.S. 41, 42, 63 S.Ct. 910, 911, 87 L. Ed. 1199, the Court stated that "the case is moot because, after petitioner's service of his sentence and its expiration, there was no longer a subject matter on which the judgment of this Court could operate." However, the Court more recently has characterized the above-quoted words as "broad dictum" which "fails to take account of significant qualifications recognized in *St. Pierre* and developed in later cases." Sibron v. New York, 1968, 392 U.S. 40, 51, 88 S.Ct. 1889, 1896, 20 L.Ed.2d 917.

One exception to the *St. Pierre* doctrine of mootness is the situation where a petitioner could not have brought his case to an appellate court for review before the expiration of his sentence. Sibron v. New York, *supra*, at 51–53. In the present case, after the judge ordered, "Take him to jail," Butts said, "I will give notice of appeal of the Court's ruling, Your Honor." The judge re-

sponded, "All right. You are going to jail now." Although Butts did not explicitly ask for a stay of execution of the sentence, he clearly expressed his desire and intent to prosecute an appeal of the court's order. The judge on his part made it clear that Butts was going directly to jail, and that he was to be held there until 1:30 P.M. There was thus no way Butts could have secured review of his case prior to the expiration of his sentence. The doctrine of mootness is therefore inapplicable.

Another qualification to the *St. Pierre* doctrine of mootness lends additional support to our rejection of the government's mootness argument. In *Sibron*, the Court stated that *St. Pierre* "must be read in light of later cases to mean that a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." 392 U.S. at 57.[1] Butts' conviction for contempt presumably could be used for impeachment and sentencing purposes in any future criminal proceeding.[2] This conviction would be especially damaging if Butts were ever again accused of being in contempt of court. Conviction for contempt of court could also have serious adverse career consequences for Butts. His conviction could provide a basis for disciplinary ac-

tion by a bar association. Opportunities for appointment to the bench or to other high office might be foreclosed as a result of this blot upon his record. The conviction might damage Butts' reputation in the legal community, and this in turn might affect his ability to attract clients and to represent them effectively, especially in open court. In light of these possible collateral consequences, Butts' appeal is not "abstract, feigned, or hypothetical" so as to justify dismissal for mootness. See *Sibron, supra,* 392 U.S. at 57.

### III.

Rule 42(a) of the Rules of Criminal Procedure allows the judge to punish certain conduct summarily:

> "(a) *Summary Disposition.* A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record."

■ Appellate courts have often acknowledged the danger of abuse inherent in a proceeding which does not provide all of the safeguards which normal-

---

1. The Court in *Sibron* noted that the appellant's misdemeanor conviction could be used for impeachment and sentencing purposes in future criminal proceedings. In Ginsberg v. New York, 1968, 390 U.S. 629, 633 n. 2, 88 S.Ct. 1274, 20 L.Ed.2d 195, the doctrine of mootness was not applied because it was possible that the appellant's license to operate a luncheonette might be withdrawn in consequence of his conviction. In Street v. New York, 1969, 394 U.S. 576, 579–580 n. 3, 89 S.Ct. 1354, 22 L.Ed.2d 572, the proceedings were not moot in part because the appellant's employer, the New York Transit Authority, had instituted disciplinary proceedings against him as a result of his conviction.

2. In Bloom v. Illinois, 1968, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522, the Supreme Court states that,
    "Criminal contempt is a crime in the ordinary sense; it is a violation of the law,

a public wrong which is punishable by fine or imprisonment or both. In the words of Mr. Justice Holmes:
"'These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech.' Gompers v. United States, 233 U.S. 604, 610, 34 S.Ct. 693, 695, 58 L.Ed. 1115 (1914). Criminally contemptuous conduct may violate other provisions of the criminal law; but even when this is not the case convictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same. Indeed, the role of criminal contempt and that of many ordinary criminal laws seem identical—protection of the institutions of our government and enforcement of their mandates."

ly surround criminal prosecutions.[3] Because of this danger, the procedural requirements of Rule 42(a) must be strictly observed. Pietsch v. President of United States, 2 Cir. 1970, 434 F.2d 861, 864 (Justice Clark); Widger v. United States, 5 Cir. 1957, 244 F.2d 103, 107. One of these requirements is that the order entered by the judge "shall recite the facts."

The recitation of the facts in the certificate serves an important purpose. As stated in Tauber v. Gordon, 3 Cir. 1965, 350 F.2d 843, 845 (en banc), "This requirement is more than a formality. It is essential to disclosure of the basis of decision with sufficient particularity to permit informed appellate review." A relatively recent Ninth Circuit opinion has expanded upon this idea:

> " 'Informed appellate review' is possible only if the facts are stated in sufficient detail for the appellate court to determine whether the conduct upon which the conviction rests was contemptuous, factually and legally; whether it was of such character, and occurred in such circumstances, as to permit summary conviction under Rule 42(a), and because Rule 42 sentences are subject to appellate review and revision, whether the conduct relied upon justified the sentence imposed." United States v. Marshall, 9 Cir. 1971, 451 F.2d 372, 375.

■■ The order of contempt must recite the specific facts upon which the conviction is based. Conclusory language and general citations to the record are insufficient.[4] The order entered by the judge in the instant case does not recite the facts with particularity, and therefore does not satisfy Rule 42(a). The order states, "That the contempt hereinabove described is an accumulation of remarks of counsel made during the absence of the jury and is confined to such acts of contempt as were committed by the said Charles D. Butts in the absence of the jury." Although there were proceedings in chambers on December 6, the remarks to which the order refers are probably those which immediately preceded the finding of contempt on December 7. However, the order does not make clear exactly which of Butts' remarks the court considered contemptuous. To uphold Butts' conviction, we would have to engage in speculation and guesswork. This we refuse to do. We therefore are compelled to reverse Butts' conviction.

## IV.

From the sentence imposed by the judge in this case, it is clear that he was primarily concerned with the preservation of order in the courtroom during the trial in which Butts was participating. Since that trial is long since concluded, we think a proper disposition of this case is to reverse the order of contempt and to dismiss the proceedings against Butts.

Reversed and rendered.

## APPENDIX

MRS. JANE ROBERTS, a witness for the Government, having first been duly

3. Bloom v. Illinois, 1968, 391 U.S. 194, 202, 88 S.Ct. 1477, 20 L.Ed.2d 522; Green v. United States, 1958, 356 U.S. 165, 188, 198ff, 78 S.Ct. 632, 2 L.Ed.2d 672 (dissenting opinion); Cammer v. United States, 1956, 350 U.S. 399, 76 S.Ct. 456, 100 L.Ed. 474; Sacher v. United States, 1952, 343 U.S. 1, 12, 72 S.Ct. 451, 96 L.Ed. 717; Nye v. United States, 1941, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172; Cooke v. United States, 1925, 267 U.S. 517, 539, 45 S.Ct. 390, 69 L.Ed. 767; Ex parte Hudgings, 1919, 249 U.S. 378, 39 S.Ct. 337, 63 L.Ed. 656; Ex parte Terry, 1888, 128 U.S. 289, 313, 9 S.Ct. 77, 32 L.Ed. 405; Widger v. United States, 5 Cir. 1957, 244 F.2d 103; United States v. Meyer, 1972, 149 U.S.App.D.C. 212, 462 F.2d 827; United States v. Seale, 7 Cir. 1972, 461 F.2d 345; Richardson v. United States, 8 Cir. 1959, 273 F.2d 144; Farese v. United States, 1 Cir. 1954, 209 F.2d 312.

4. Widger v. United States, *supra*, 244 F.2d at 107; Pietsch v. United States, *supra*, 434 F.2d at 863–864; United States v. Marshall, *supra*, 451 F.2d at 375. See also 3 C. Wright, Federal Practice and Procedure, § 708 at 170, and cases cited therein.

sworn, in answer to questions propounded, testified:

### ON CROSS-EXAMINATION:

Questions by Mr. Butts:

\* \* \* \* \* \*

Q Mrs. Roberts, I will hand you Defendant's Exhibit A, and I will ask you if that is a picture of David Schrimsher and your little boy, Tiger?

A Yes, that is a picture of David Schrimsher and my little boy, Tiger, but I certainly don't know when this was taken.

Q Well, maybe I can refresh your memory—

A Wait a minute, he doesn't have— that is not my little boy's clothes, I can tell you that right now.

Q Is it your little boy?

A It looks like my little boy, but then again, that is not a very good picture, and I have never seen anything like this before, so I don't know what you are trying to pull.

Q Trying to pull?

A I am sorry, but—

Q All right. Now, you told this young man not only that your grandfather, Mr. Barrakat, I take it, was supposed to be his name?

A My grandfather's name is Lloyd Young.

Q Well, did you tell him, did you tell this young man that your grandfather's name was Barrakat?

A Yes, I did.

Q Did you tell this young man anything about a man out of Chicago by the name of Marcus?

A No.

Q Do you know a man out of Chicago by the name of Marcus?

A No.

Q That is connected with your family?

A No.

Q You recognize this picture (indicating), do you not?

THE COURT: Mark it as an exhibit, please, Counsel.

MR. BUTTS: Well, I don't believe I want to—

THE COURT: Well, you mark it as an exhibit, I said mark it, you showed it to her, and I want to know what you showed her.

MR. BUTTS: All right, I will do that upon instructions of the Court.

THE COURT: Well, you will follow the instructions of the Court all right.

MR. BUTTS: That is exactly what I am doing, if the Court please.

THE COURT: All right, don't argue with me.

MR. BUTTS: Let the record reflect I am not arguing with the Court.

THE COURT: Just shut up then.

MR. BUTTS: Let the record reflect I resent the Court telling me to shut up, I am an officer of this court—

THE COURT: All right, the jury will be retired, retire the jury from the courtroom.

(The jury then left the courtroom).

THE COURT: Now, Mr. Butts, you are going to get one thing straight—

MR. BUTTS: Yes, sir.

THE COURT: If you are going to stay an officer in this court, and you are going to stay out of jail, you are going to follow my orders, and you are not going to talk back when I tell you to not talk back, you understand that?

MR. BUTTS: Yes, sir.

THE COURT: All right. I want it clearly understood, and I am going to carry this, as to whether I find you in contempt of the court, or not.

MR. BUTTS: Yes, sir.

THE COURT: And I don't want it to happen again, when you show an exhibit to a witness, and I tell you to mark it, I mean mark it, because I am going to know what you showed her—that witness—so that the record will reflect it. Now, don't play with me. Bring the jury back.

MR. BUTTS: May I state something for the record?

THE COURT: Not a word, I told you to shut up, now, I mean it. Now, you just go ahead and examine your witness.

MR. BUTTS: For the record, I wanted—

THE COURT: For the record nothing.

MR. BUTTS: Let the record reflect I cannot speak—

THE COURT: That is obvious.

MR. BUTTS: —my understanding of the Court—

THE COURT: I am not interested in your understanding of the Court. I want you to take your instructions from me.

MR. BUTTS: I do, Your Honor.

THE COURT: All right. Well, now, you be quiet when I tell you to be quiet in the future.

MR. BUTTS: If I have something that is germane to my client—?

THE COURT: You may retire the jury and put it in the record.

MR. BUTTS: Thank you, Your Honor.

THE COURT: But you are not to talk back to me in the presence of this jury. I am running this court.

MR. BUTTS: Yes, sir.

THE COURT: And as long as you are an officer in this court, you are under my control.

MR. BUTTS: If the Court considers my talking like I did as talking back, if that is what the Court understands, I certainly apologize because I have practiced law a long time and I don't do that to courts.

THE COURT: You may have practiced before, but you also disclosed your gross ignorance of some things that go on in Federal Court.

MR. BUTTS: That would be a matter of opinion, Your Honor.

THE COURT: Well, that is a matter of opinion. There you go again, you are insulting, you are not conducting yourself as you should, you are the first attorney that I ever had this kind of trouble with. Now, you follow my instructions hereafter, if you want to remain an officer and practice in this court. Bring the jury back.

MR. BUTTS: I take exception to the Court's comments for the record.

THE COURT: Marshal, put this man in jail. Where is the marshal?

THE MARSHAL: Right here.

THE COURT: We will just have a recess. You go over and think it over for an hour, then you tell me whether you are ready to follow my orders, or ready to shut up when I tell you to shut up.

MR. BUTTS: I am ready, but I wanted to take an exception—

THE COURT: You got your exceptions in the record.

MR. BUTTS: Yes, sir.

THE COURT: You have your exceptions. You don't have to except in the Federal Court, it is in the rules.

MR. BUTTS: Thank you.

THE COURT: You have your objection. All you have to do is make your objection. That is something else you don't know, apparently. I am going to sentence this man to one hour in jail in contempt of this proceeding. I am going to recess this case until 1:30. Take him to jail.

MR. BUTTS: I will give notice of appeal of the Court's ruling, Your Honor.

THE COURT: All right. You are going to jail now.

MR. BUTTS: Yes, sir.

THE COURT: You will be back at 1:30. Marshal, have him back here at 1:30, keep him in jail until 1:30.

THE MARSHAL: Yes, Your Honor.

MR. BUTTS: May I make a call to my attorney?

(The Court then left the courtroom).

THE MARSHAL: The Court is in recess until 1:30.