Ted C. CONNELL and Ace Connell, Plaintiffs-Appellants,

v.

Lt. General Robert M. SHOEMAKER, Defendant-Appellee.

No. 75–3998.

United States Court of Appeals, Fifth Circuit.

July 8, 1977.

Donald S. Thomas, Jr., Austin, Tex., John E. McKelvey, Paul H. Hayers, Electra, Tex., for plaintiffs-appellants.

John E. Clark, U. S. Atty., San Antonio, Tex., William Kanter, Atty., App. Sec., An-

thony J. Steinmeyer, Atty., Rex E. Lee, Asst. Atty. Gen., Civil Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before AINSWORTH and MORGAN, Circuit Judges, and LYNNE, District Judge.*

LYNNE, District Judge:

Appellants sought declaratory and injunctive relief from the imposition by appellee of a 180-day prohibition of appellee's military personnel from renting residential property owned or managed by appellants. Upon removal of the sanction at the expiration of the 180-day period, the trial court dismissed the action as moot as to both claims. We reverse.

*Chronology*

In April 1974 a black enlisted soldier stationed at Fort Hood, Texas, filed a complaint with that command, alleging that the management of certain apartments owned by appellant Ted C. Connell in neighboring Killeen, Texas, had discriminated against him in the rental of an apartment because of his race.[1] Officials at Fort Hood initiated an investigation of the complaint by dispatching a white and a black enlisted soldier to the suspect rental office as "verifiers." After each verifier had ostensibly sought an apartment at the rental office, they likewise reported a discrepancy in reception between black and white applicants. Following informal questioning of the employee charged with discrimination and an informal meeting between Fort Hood officials and appellant Ted C. Connell, the Commanding Officer of Fort Hood informed Connell by letter of the formal charge against him and invited him, in accordance with pertinent Army Regulations, to "submit matters in his behalf." Connell responded with a letter disclaiming the alleged discrimination as a matter of fact or policy. No formal hearing was held.

Concluding that a substantiated complaint of racial discrimination in housing had been presented against Connell, the Commanding Officer of Fort Hood on July 31, 1974, imposed upon appellants[2] the minimum sanction of Army Regulation 600–18 by prohibiting military personnel stationed at Fort Hood from entering leases for some 100 rental housing units owned or managed by Connell for a period of 180 days, with a proviso that the restrictive sanction might be lifted at the end of that period upon assurance from Connell that there would be no such discrimination in the future.

In December 1974 appellants brought the present suit for injunctive relief from the sanctions and for a declaration that the sanctions were invalid, alleging that the Army had acted contrary to the provisions of Army Regulation 600–18 in imposing the restrictive sanctions; that the Army's refusal to grant appellants a formal hearing and its refusal to confront appellants with the evidence and witnesses against them violated their due process rights; and that the Army's actions and findings were contrary to Section 10 of the Administrative Procedure Act, 5 U.S.C. § 706(2), in that they were arbitrary, capricious, an abuse of discretion, and unsupported by the evidence.

After Connell assured the Commanding Officer at Fort Hood in January 1975 that there would be no future acts of discrimination, the Commanding Officer lifted the restrictive sanction upon expiration of the

---

* Senior District Judge of the Northern District of Alabama, sitting by designation.

1. Specifically, Specialist Four Floyd Hodge alleged that when he inquired in person about renting an apartment from Curlee Rentals, an employee of Curlee told him that no apartments were available, but that only moments later the same employee told certain white friends of his that two apartments were immediately available.

2. In accordance with Army Regulation 600–18, ¶ 2–2(c), the restrictive sanction was imposed against "all housing facilities owned or operated by" appellant Ted C. Connell. Appellant Ace Connell, brother of Ted Connell, joined as plaintiff in this suit because of his contention that one of the rental units included in the Army's rental prohibition in fact is owned not by Ted Connell, but by a corporation, Ace Insurance Agency, Inc., which is owned solely by Ace Connell and his wife.

180-day period. In subsequent answer to appellants' complaint, appellee raised the question of mootness and thereafter moved for summary judgment on that basis. On October 2, 1975, the district court granted appellee's motion for summary judgment and dismissed appellants' complaint as moot.

### Mootness

■ The sole issue on appeal is whether the court below properly dismissed this action as moot. While appellants' claim for injunctive relief concededly was rendered moot by the Army's lifting of the rental prohibition, appellants dispute the mootness of their claim for declaratory judgment. Since it is possible for a "live" controversy to remain where some but not all issues in a case have become moot, *Powell v. McCormack*, 395 U.S. 486, 497, 89 S.Ct. 1944, 23

L.Ed.2d 491 (1969), the question of the mootness *vel non* of appellants' claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, becomes "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). We hold that such a controversy exists in the present case.

■ While appellants attack the district court's finding of mootness on various bases,[3] we view the continuing practical consequences of the Army's determination of discrimination as sufficient to negate mootness. Appellants have interests in various businesses engaged in retail sales of goods and services directly to the public in

---

**3.** We reject appellants' alternative contentions that mootness is avoided by both the doctrine of "capable of repetition, yet evading review" and alleged collateral *legal* consequences of the Army's finding of discrimination. Because of our disposition of the case, both contentions may be disposed of briefly.

With regard to the doctrine of "capable of repetition, yet evading review," *Southern Pacific Co. v. ICC*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), in its recent decision in *Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975), the Supreme Court explicated its earlier treatment of the doctrine in *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), and established the following criteria for its application in non-class actions:

> *Sosna* decided that in the absence of a class action, the "capable of repetition, yet evading review" doctrine was *limited to the situation where two elements combined:* (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a *reasonable expectation* that the *same complaining party* would be subjected to the same action again. The instant case, not a class action, clearly does not satisfy the latter element. While petitioners will continue to administer the North Carolina parole system with respect to those who at any given moment are subject to their jurisdiction, there is no *demonstrated probability* that respondent will be among that number. [Emphasis added].

423 U.S. at 149, 96 S.Ct. at 349. Both of the above criteria, of course, must be satisfied for the doctrine to apply. Although it is probable

that the 180-day restrictive sanction imposed on appellants was too short for the action to be litigated fully at the trial and appellate levels before it expired, it is sufficient here to observe that the second requisite is not satisfied. While the Army in general and the Commanding Officer at Fort Hood in particular clearly will continue to enforce Army Regulation 600–18 against all violators, in view of Ted Connell's continued disclaimer of discrimination in the first instance as well as his letter of assurance that he will not discriminate in the future, it can scarcely be said that there is a "reasonable expectation," let alone a "demonstrated probability," that appellants will be penalized again under Army Regulation 600–18.

Appellants would also avoid mootness by reliance upon alleged collateral legal consequences (as contrasted with collateral pragmatic consequences) of the Army's finding of discrimination. In particular, appellants argue that if the Army were to determine in the future that appellants had again discriminated in the rental of housing, appellants probably would be subject to even harsher sanctions as "second offenders." Although the pertinent regulation provides no criteria for sanctions beyond its minimum 180-day rental proscription, it is indeed reasonable to expect that a repeat offender would be subject to harsher sanctions. Yet, for the same reasons set out in the previous paragraph, there is little expectation or probability of a future determination of discrimination. So remote a "threat" cannot sustain the life of this controversy.

the area adjacent to Fort Hood.[4] Since a favorable public image is vital to the success of such enterprises, the imputation of bigotry implicit in the Army's widely publicized sanctions against appellants could not but harm their reputations and, concomitantly, their livelihoods with clientele both black and white. Additionally, appellant Ted Connell has held various local civic and elective political positions;[5] whatever such aspirations he might yet harbor have almost certainly been undercut by the same stigma. In holding that an attorney's challenge to his conviction for criminal contempt was not rendered moot by completion of his sentence, this Court assessed the collateral consequences of the conviction and, in addition to its legal consequences, gave considerable weight to the possibility of harm to the attorney's practice of law as well as his "[o]pportunities for appointment to the bench or to other high office." *United ed States v. Schrimsher (In re Butts)*, 493 F.2d 842, 844 (5th Cir. 1974). Although the present case does not involve a criminal conviction, we view the collateral consequences in the two cases as analogous.

 Appellants seek, *inter alia*, a declaration that the unavailability of any type of formal hearing to a party charged under Army Regulation 600–18 has deprived them of constitutional rights without due process of law. It is well settled that one's reputation or good name constitutes a cognizable "liberty" interest for purposes of the due process clauses of both the fifth and fourteenth amendments. *E. g., Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1974); *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1950). "The essence of due process is that 'deprivation of life, liberty, or property by adjudication be preceded by

notice and *opportunity for hearing appropriate to the nature of the case.*'"[6] No formal hearing was afforded appellants prior to the determination of discrimination at issue here. Whether Army Regulation 600–18 or its application here is thus constitutionally deficient goes to the merits of the controversy and is not presently before this Court. However, without even addressing appellants' alternative contentions that the Army itself violated Army Regulation 600–18 and the Administrative Procedure Act, it is sufficient for us to hold that a "live" controversy as to the due process question subsists between the parties and thus warrants consideration of the merits in the court below.

Accordingly, we reverse and remand to the district court for its consideration of the merits of appellants' claim for declaratory judgment.

REVERSED and REMANDED.

---

4. Besides his rental properties, Ted Connell's business interests have included a Chevrolet dealership in Killeen, Connell Rent-A-Car, Connell Used Cars, Modern Cleaners, Rio Airways, Inc., as well as stockholder interests in several area banks. Ace Connell owns Ace Insurance Agency in addition to rental property.

5. Ted Connell has served as Mayor of Killeen, trustee of Killeen Independent School System,

and, until imposition of the sanctions in question, a member of the Fort Hood Civilian Advisory Committee.

6. *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088 (5th Cir., 1977), *quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950).