358 So.2d 247 (1978)
Edward F. KEEZEL, II, Appellant,
v.
STATE of Florida, Appellee.
No. 77-863.
District Court of Appeal of Florida, Fourth District.
May 9, 1978.
*248 James K. Freeland, Orlando, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, Basil S. Diamond and John D. Cecilian, Asst. Attys. Gen., West Palm Beach, for appellee.
DOWNEY, Chief Judge.
The trial judge found Keezel, a lawyer, guilty of two instances of criminal contempt arising out of Keezel's representation of a defendant in a criminal case.
The first alleged contempt occurred when Keezel arrived for trial twenty-five minutes late. The second alleged contempt involved Keezel's announcement in the presence of the jury venire that he had been retained as counsel only the preceding day. This statement was a response to a direct question by the judge. The trial judge fined Keezel $50.00 for the first contempt and $150.00 for the second.
Fla.R.Crim.P. 3.830 requires that before a person is found guilty of a direct criminal contempt and punished the Judge must advise the person of the accusation against him and inquire whether the person has any cause to show why he should not be adjudged guilty of contempt. The Judge must also give the person the opportunity to present evidence of excusing or mitigating circumstances.[1] Neither one of these important facets of this rule was honored by the trial judge here. No doubt Keezel knew what the facts were upon which the adjudication was based, but he was not given the slightest opportunity to show cause why he should not be held in contempt nor to show any excusing or mitigating circumstances.
This rule is frequently violated we would suppose due to the circumstances and atmosphere which frequently prevail in direct contempt situations. Often the trial judge has been provoked or has become exasperated by delays or by other conduct which tries his patience. But patience is one of the characteristics which go to make up a good judicial temperament. Adjudicating a person, and particularly a lawyer, in contempt is a serious matter to be approached judiciously. No doubt that is why the rule requires that the person be afforded an opportunity to explain his conduct before being adjudicated guilty.
Keezel may or may not have been guilty of contempt, but the adjudication here was premature and must be reversed so that Keezel will be afforded the opportunities granted by the rule to explain his conduct.
This case involves another question of more general interest which we deem worthy of mention. Keezel paid the $200.00 fine and, accordingly, appellee suggests the question raised on appeal is moot and should not be considered. There is respectable authority for such a contention, but for the reasons hereafter set forth we conclude the matter is not moot.
Many of the cases discussing appeals as moot where the contemnor has paid the fine or served the sentence levied for contempt of court rely upon the decision of the Supreme Court of the United States in St. Pierre v. United States, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943). There the court held that the case was moot because the petitioner had fully served his sentence before certiorari was granted. However, in a later case[2] the court refined the rule by stating that St. Pierre "must be read in [the] light of later cases to mean that a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." (88 S.Ct. at 1900). In the case of United States v. Schrimsher (In re Butts), Attorney at *249 Law, 493 F.2d 842 (5th Cir.1974), some of the legal consequences which might accrue to a lawyer as a result of an adjudication of contempt were pointed out when the court said:
"... Butts' conviction for contempt presumably could be used for impeachment and sentencing purposes in any future criminal proceeding. This conviction would be especially damaging if Butts were ever again accused of being in contempt of court. Conviction for contempt of court could also have serious adverse career consequences for Butts. His conviction could provide a basis for disciplinary action by a bar association. Opportunities for appointment to the bench or to other high office might be foreclosed as a result of this blot upon his record. The conviction might damage Butts' reputation in the legal community, and this in turn might affect his ability to attract clients and to represent them effectively, especially in open court. In light of these possible collateral consequences, Butts' appeal is not `abstract, feigned, or hypothetical' so as to justify dismissal for mootness." (cites omitted) Id. at 844.
Envisioning the possibility of definite adverse legal consequences flowing from Keezel's adjudication of contempt, we find the issue not moot even though Keezel has paid the fine levied and may not be able to effect its return.
In view of the foregoing, we reverse the order appealed from and remand the cause to the trial court with directions to allow appellant a hearing so as to conform to the requirements of Fla.R.Crim.P. 3.830.
REVERSED AND REMANDED with directions.
MOORE, J., and RIVKIND, LEONARD, Associate Judge, concur.
NOTES
[1] Jacobs v. State, 327 So.2d 896 (Fla. 3rd DCA 1976); McDonald v. State, 321 So.2d 453 (Fla. 4th DCA 1975); Weech v. State, 309 So.2d 246 (Fla. 4th DCA 1975), and Miller v. State, 305 So.2d 826 (Fla. 4th DCA 1975).
[2] Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).