REVISED, June 5, 1998

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

———————————————————

No. 96-11180

———————————————————

OLLIE DAILEY,

Plaintiff-Appellant

NOEMI ALESSANDRA COLLIE ,

Appellant

VERSUS

VOUGHT AIRCRAFT COMPANY,

Defendant.

——————————————————————————

OLLIE DAILEY,

Plaintiff-Appellant

NOEMI ALESSANDRA COLLIE,

Appellant

VERSUS

INTERNATIONAL UNION, UNITED AEROSPACE WORKERS, LOCAL 848,

Defendant.

———————————————————————————

Appeal from the United States District Court
For the Northern District of Texas

———————————————————————————

May 12, 1998

Before JOLLY, SMITH, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge.

Noemi Alessandra Collie, an attorney-at-law, appeals from an order by the district

court disbarring her from practice in the United States District Court for the Northern District of Texas until the payment of monetary sanctions imposed upon her and her client for violations of Federal Rule of Civil Procedure 11. Subsequent to filing this appeal, Collie paid the sanctions and was reinstated to practice by the district court. We reverse and vacate the district court's disbarment order. This appeal is not moot because the disbarment on the attorney's record may affect her status as a member of the bar and have other collateral consequences. Because the attorney was not given notice of the charges made or opportunity for explanation and defense prior to disbarment, she was deprived of procedural due process required by the United States Constitution and the district court's own local rules.

I.

Appellant attorney Noemi Collie filed three separate lawsuits on behalf of plaintiff Ollie Dailey against Dailey's employer, Vought Aircraft Company (Vought). The first lawsuit concerned claims of race discrimination and retaliation in violation of Title VII. After a bench trial, the district court rejected Dailey's claims and entered final judgment for Vought. On motion by Vought, after considering written responses of the parties, the district court found that Collie and Dailey violated Federal Rule of Civil Procedure 11(b)(1) and (b)(3) by repetitiously asserting essentially the same claims in two other lawsuits. The district court imposed sanctions by ordering Collie and Dailey to pay the costs and attorney's fees Vought incurred in defending the actions. Dailey appealed the sanctions order. This Court affirmed. See Dailey v. LTV Aerospace & Defense Co., Nos. 95-10156 & 95-10437 (5th Cir. 1996).

Subsequently, on June 18, 1996, the district court ordered Collie and Dailey to pay the imposed sanctions of $8,478.92 within eleven days. After the sanctions were not paid timely, the district court, on July 18, 1996, disbarred Collie pending their

2

payment, without giving Collie notice or an opportunity to be heard with respect to her disbarment. Collie moved the district court for reconsideration and petitioned the chief judge of the district for relief under local rules. The district court denied reconsideration but amended its order to allow Collie to continue representing clients in five particular cases. The chief judge denied Collie's appeal.

Collie appealed to this court from the decisions of the district court and the chief judge of the district on September 19, 1996. The next day Collie moved this court to stay the district court orders. This court denied the stay. Collie paid the monetary sanctions on September 23, 1996. The district court, after receiving notice of the payment, issued an order reinstating Collie to practice in the Northern District of Texas on October 7, 1996.

II.

Because Collie paid the monetary sanctions in full and was reinstated to practice before the Northern District of Texas, we consider first whether her appeal is moot. Matter of Commonwealth Oil Refining Co., 805 F.2d 1175, 1180-81 (5th Cir. 1986), cert. denied, 483 U.S. 1005 (1987). The grant of subject matter jurisdiction to the federal courts found in Article III of the United States Constitution extends only to actual "cases" and "controversies". U.S. Const., art. III, sect. 2; Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). These terms serve to limit the federal judicial power in two ways. 15 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE §101.01, 101-14 (3d ed. 1997). First, federal courts may only address questions presented in an adversary context and in a form amenable to resolution through the judicial process. Id. Second, the judiciary's role is constrained to the extent necessary to prevent intrusion upon areas which are more appropriately handled by the other two branches of the federal government. Id. The term justiciability serves to give expression to this dual limitation

3

imposed upon the federal courts by the case or controversy requirement. Id.

The justiciability of an issue, in turn, is determined by the doctrines of standing, mootness, and ripeness. Id. § 101.01, 101-13. The Supreme Court has explained that "mootness [is] the 'doctrine of standing set in a timeframe [.] The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980)(citation omitted); see also Arizonians For Official English v. Arizona, 117 S.Ct. 1055, 1068 (1997); Lewis, 494 U.S. at 477-78. Under this doctrine, although a justiciable controversy may have existed at the time litigation was commenced, the action must be dismissed for want of jurisdiction if the controversy ceases to exist at some point in the litigation. Calderon v. Moore, 116 S.Ct. 2066, 2067 (1996) (per curiam); Church of Scientology of California v. United States, 506 U.S. 9, 12 (1992); 15 MOORE ET AL., §101.90, 101-165. Furthermore, a federal court is obligated to raise the issue, sua sponte, if the facts suggest mootness notwithstanding the silence of the parties with respect to the issue. United States v. Rice, 404 U.S. 244, 245 (1971); MOORE ET AL., § 101.92, 101-168.

A case may become moot for several reasons. One such reason can be an intervening factual event which causes the plaintiff to no longer have a present right to be vindicated or a stake or interest in the outcome. Calderon, 116 S.Ct. at 2067; MOORE ET AL., § 101.92, 101-169. An intervening event, however, will only render a plaintiff's action moot if the plaintiff is divested of all personal interest in the result or the effect of the alleged violation is completely eradicated and the event will not occur again. MOORE ET AL., § 101.93[2], 101-170. The availability of even partial relief is enough to prevent mootness. Id.; Church of Scientology, 506 U.S. at 450; 13A WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3533.2 (2d ed. 1984).

Even if the plaintiff's primary injury has been resolved, the collateral

4

consequences doctrine serves to prevent mootness when the violation in question may cause continuing harm and the court is capable of preventing such harm. Sibron v. New York, 392 U.S. 40, 53-59 (1968); 1 ROTUNDA & NOWAK, TREATISE OF CONSTITUTIONAL LAW §2.13 (2d ed. 1992); MOORE ET AL., § 101.99[3], 101-190. As long as the parties maintain a "concrete interest in the outcome" and effective relief is available to remedy the effect of the violation, the size of the dispute is irrelevant. Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 571 (1984). Although the collateral consequences doctrine is most often used to enable review of expired criminal sentences, it frequently has been applied in the civil context. WRIGHT ET AL., § 3533.3; MOORE ET AL., § 101.00[3], 101-190.

In Connell v. Shoemaker, 555 F.2d 483, 486-487 (5th Cir. 1977), the Commanding Officer at Fort Hood prohibited military personnel from renting residential property owned or managed by the appellants, the Connells, for 180 days in response to allegations that appellant Ted Connell had discriminated against black military personnel in renting apartments. The appellants filed suit in December 1974 seeking declaratory and injunctive relief from the 180 day prohibition. The district court granted summary judgment in favor of the appellee on the ground of mootness as the appellee had lifted the prohibition after the 180 day time period had expired and Ted Connell had given his assurance that there would be no future acts of discrimination.

This Court reversed because the "continuing practical consequences of the Army's determination of discrimination [were] sufficient to negate mootness." Id. at 486. Specifically, the "imputation of bigotry implicit in the Army's widely publicized sanctions" could only harm the appellants' reputations and concomitantly their livelihoods as the success of the businesses in which the appellants held interests depended on the maintenance of a favorable public image. Id. at 487. The moral stigma of the sanction imposed by the appellee harmed the aspirations of Ted Connell as a

5

local politician.  Id.

This Court applied the collateral consequences doctrine to defeat a claim of mootness in Umanzor v. Lambert, 782 F.2d 1299 (5th Cir. 1986).  Umanzor, a citizen of El Salvador, was deported from the United States on October 14, 1983.  Before his deportation, Umanzor had applied for political asylum; his request was denied.  This Court relied on the collateral consequences doctrine in rejecting the argument that Umanzor's release from the custody of the airline transporting him to Central America mooted the appeal of his habeas corpus claim.  Specifically, we noted that aliens who have been arrested and deported are ineligible for visas for purposes of readmission into the United States for five years and are guilty of a felony if entry, or an attempted entry, into the United States does occur.  Id. at 1301.

As the "mere possibility of adverse collateral consequences is sufficient to preclude a finding of mootness," Collie's case was not rendered moot by her payment of the sanctions and reinstatement to practice in the Northern District of Texas.  Id. (quoting Sibron v. New York, 392 U.S. at 55).  Because admission to the appropriate bar is an absolute prerequisite to the practice of law, it is hardly inconceivable that disbarment, even if only temporary, can be detrimental to an attorney's professional reputation, well-being, and success.  Collie explains in her brief that the nature of her practice results in the majority of her cases being litigated in federal court.  Although she is now able to practice in the Northern District of Texas, her professional record continues to be tarnished.  The order disbarring Collie remains of record and open to perusal by the judges and attorneys of any court before which she seeks to practice.  It is reasonably foreseeable that the disbarment on Collie's record may have a detrimental impact on her professional career.

Our decision in United States v. Shrimsher (In re Butts), 493 F.2d 842 (5th Cir. 1974), strongly supports this conclusion by analogy.  Butts, an attorney, was found to

6

be in contempt of court and ordered incarcerated for two hours. On appeal, the government argued that Butts' appeal was moot as he had already served his period of confinement. We disagreed holding that collateral legal consequences rendered the mootness doctrine inapplicable. Id. at 844. This Court pointed out the collateral consequences of Butts' criminal conviction, i.e., its availability for impeachment and future sentencing purposes. Moreover, this Court continued:

> Conviction for contempt of court could also have serious adverse career consequences for Butts. His conviction could provide a basis for disciplinary action by a bar association. Opportunities for appointment to the bench or to other high office might be foreclosed as a result of this blot upon his record. The conviction might damage Butts' reputation in the legal community, and this in turn might affect his ability to attract clients and to represent them effectively, especially in open court. In light of these possible collateral consequences, Butts' appeal is not 'abstract, feigned, or hypothetical' so as to justify dismissal for mootness. See Sibron, supra, 392 U.S. at 57.

Shrimsher (Butts), 493 F.2d at 844.

The potential collateral consequences of a criminal contempt conviction that prevented mootness in Butts' case are identical or quite similar to the serious adverse career consequences of disbarment that threaten Collie.

Because of its inapposite and distinctive context, In re Taylor, 916 F.2d 1027 (5th Cir. 1990) (per curiam), does not persuade us that the present appeal is moot. The district court sanctioned Taylor for use of an unprescribed substance outside of court and apparently unrelated to his law practice, ordering him to undergo drug monitoring, provide and advertise free legal services to indigents, secure professional liability insurance, and provide an accounting of the work done and cost incurred. The court stated that Taylor would be subjected to further sanctions, including disbarment, if he failed to comply with these conditions. Taylor appealed but resigned from the bar prior to this Court's consideration of the case.

This Court in Taylor concluded that the appeal was moot and vacated the judgment below for several reasons. Taylor's practice related conditions and

7

obligations under the district court's order ended upon his resignation from the bar. This Court would not condone a self-help type stay which would allow Taylor to avoid the order while challenging it. In addition, this Court concluded that the possible collateral consequences in Taylor's case were too remote, characterizing his argument on this subject as "insufficient." Taylor, 916 F.2d at 1028. Moreover, the Court apparently excepted the controversy from mootness in the event that Taylor sought readmission and the district court reinstated its sanctions order. Id., n.1; Id. (Rubin, J. concurring).

The circumstances of the present case distinguish it categorically from Taylor. Collie did not resign from the bar. She is an active practitioner who suffers from the stigma of a recorded disbarment. Rather than attempt to avoid the district court's order to pay monetary sanctions, Collie complied with it and now seeks relief from the real and significant threat of adverse consequences to her law practice and career.

## III.

Having decided that Collie's appeal is not moot, we consider whether her disbarment must be set aside because the district court deprived her of procedural due process as she was not afforded notice and an opportunity to be heard prior to being expelled from the bar.

Although disbarment is intended to protect the public, it is a "punishment or penalty imposed on the lawyer." In re Ruffalo, 390 U.S. 544, 550 (1968). Disbarment or suspension proceedings are adversarial and quasi-criminal in nature. Id. at 551; United States v. Brown, 72 F.3d 25, 29 (5th Cir. 1995); In re Medrano, 956 F.2d 101, 102 (5th Cir. 1992). As such, an attorney is entitled to procedural due process which includes notice and an opportunity to be heard in disbarment or suspension proceedings. Ruffalo, 390 U.S. at 550; Ex parte Bradley, 74 U.S. (7 Wall.) 364, 375

8

(1868); Medrano, 956 F.2d at 102; NASCO, Inc. v. Calcasieu Television and Radio, Inc., 894 F.2d 696, 706-07 (5th Cir. 1990), aff'd sub nom., Chambers v. NASCO, 501 U.S. 32 (1991); see also Standing Comm. on Discipline v. Ross, 735 F.2d 1168, 1170 (9th Cir.), cert. denied, 469 U.S. 1081 (1984) (at a minimum, an attorney subject to discipline is entitled to procedural due process, including notice and an opportunity to be heard). The burden of proving all of the elements of a violation rests with the moving party. Medrano, 956 F.2d at 102. A federal court may only disbar an attorney upon clear and convincing evidence of a violation warranting this extreme sanction. Id.; NASCO, 894 F.2d at 699.

Moreover, Local Rule 13.2 (b) affords an attorney similar procedural due process protections as part of any disciplinary action taken by a district court. The rule provides:

> (b) Grounds for Disciplinary Action. This Court may, after the member has been given an opportunity to show cause to the contrary, take any appropriate disciplinary action against any member of its Bar.

N. DIST. TEX. R. 13.2 (b)(1996) (emphasis added).

Federal district courts are bound by the disciplinary rules they implement. Matter of Thalheim, 853 F.2d 383, 386, 388 (5th Cir. 1988). Although we conclude that the only logical reading of this rule requires notice and an opportunity to be heard before an attorney is disciplined by the court, any ambiguity in the rule must be construed in favor of the attorney charged with behavior warranting discipline. Brown, 72 F.3d at 29. Cf. Baldwin v. Hale, 68 U.S. (1 Wall.) 223, 233 (1864)("Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy this right they must first be notified.").

The record unequivocally shows that the district court did not provide Collie with notice or an opportunity to be heard before disbarring her. The court, on June 18, 1996, ordered Collie and her client to pay the imposed sanctions within 11 days. Without notifying Collie that the failure to timely pay the sanctions constituted grounds for

9

disbarment, and without affording her an opportunity to be heard on the subject, the district court, on July 18, 1996, disbarred Collie until such time as the sanctions were paid.

Collie's unsuccessful appeal of the disbarment order to the chief judge of the district did not repair the district court's violation of her rights to due process under the Constitution and the court rules. Prior to an attorney's disbarment, he or she is entitled to notice of the charges made and an opportunity to explain or defend (except for extreme misconduct occurring in open court, in the presence of the judge). Ruffalo, 390 U.S. at 550. This principle has been clearly and consistently expressed by the Supreme Court. Theard v. United States, 354 U.S. 278, 282 (1957) ("Disbarment being the very serious business that it is, ample opportunity must be afforded to show cause why an accused practitioner should not be disbarred."); Ex parte Robinson, 86 U.S. (19 Wall.) 505, 511 (1873)("Before a judgment disbarring an attorney is rendered he should have notice of the grounds of complaint against him and ample opportunity of explanation and defence."); Ex parte Garland, 71 U.S. (32 How.) 333, 378 (1866)("They hold their office during good behavior, and can only be deprived of it for misconduct ascertained and declared by the judgment of the court after opportunity to be heard has been afforded."). See also Burkett v. Chandler, 505 F.2d 217, 222, n.5 (10th Cir. 1974), cert denied, 423 U.S. 876 (1975) (disbarment proceeding void due to absence of prior notice or opportunity to be heard notwithstanding provision in local rule for review of disbarment judgment.). There may be cases of such gross and outrageous conduct in open court as to justify very summary proceedings for an attorney's suspension or removal from office, "but even then he should be heard before he is condemned." Robinson, 86 U.S. (19 Wall.) at 513, n.6 (citing Ex parte Bradley, 74 U.S. (7 Wall.) 364 (1868); Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 354 (1871)). Cf. Ruffalo, 390 U.S. at 354 (White, J. concurring)("A relevant inquiry in appraising a decision to disbar is

10

whether the attorney stricken from the rolls can be deemed to have been on notice that the courts would condemn the conduct for which he was removed."). See also Johnson v. Waddell & Reed, Inc., 74 F.3d 147 (7th Cir. 1996)(Rule 11(c)(1)(B)'s requirement that court imposing sanctions on its own initiative describe the specific conduct that appears to be a violation and direct the alleged violator to show cause to the contrary was intended to ensure due process; court's procedure of giving attorney after-the-fact opportunity to convince court to set aside rule violation it had already determined and imposed sanctions for did not comply with either the letter or spirit of the rule); Childs v. State Farm Mut. Auto. Ins. Co., 29 F.3d 1018, 1027 (5th Cir. 1994) (due process requires notice and an opportunity to be heard before Rule 11 sanctions are imposed).

Moreover, the Supreme Court in Cleveland Bd. of Education v. Loudermill, 470 U.S. 532, 542-548 (1985), held that, in the termination of a public employee, dischargeable only for cause, a post-termination hearing cannot satisfy the requirements of due process except when it is coupled with pretermination notice and pretermination opportunity to respond. Accord Clements v. Airport Authority of Washoe County, 69 F.3d 321, 333-334 (9th Cir. 1995)("In the context of process due a terminated public employee, a full post-deprivation hearing does not substitute for the required pre-termination hearing."); Chaney v. Surburban Bus Division of the RTA, 52 F.3d 623 (7th Cir. 1995); Cotnoir v. University of Maine Systems, 35 F.3d 6, 12 (1st Cir. 1994)(Constitutional deprivation complete when employee fired without pre-termination protections; therefore, post-termination grievance proceedings could not compensate for absence of pretermination process.); Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, 262-263 (1st Cir. 1987), cert. denied, 486 U.S. 1044 (1988) (opportunity to appeal after notification of action is constitutionally inadequate). This Court has recognized that Loudermill clearly established that post-termination proceedings can satisfy due

11

process requirements only when coupled with adequate pretermination process in public employment termination cases. See Price v. Brittain, 874 F.2d 252, 260-261 (5th Cir. 1989).

Even if we were to consider this case improperly under the Loudermill standards, instead of appropriately under the Supreme Court's attorney disbarment cases, we would still conclude that Collie was not afforded the process that she was due for two reasons. First, she was not given notice and an opportunity to respond prior to her disbarment. Second, the review of her disbarment by the chief judge was insufficient even for Loudermill due process purposes, not only because it was not coupled with a pre-disbarment notice and opportunity to respond, but also because of its own inherent deficiencies. The mere opportunity unsuccessfully to bring due process violations to the attention of a discretionary appellate-type forum does not constitute the notice and opportunity to be heard that is guaranteed by the Due Process Clause. See Cole v. Arkansas, 333 U.S. 196, 201-202 (1948).

Moreover, the hearing with the chief judge did not afford ample opportunity to show cause why Collie should not be disbarred: Collie's attorney was given only two days' or less notice of the hearing; the attorney objected to conducting a hearing on such short notice; and the attorney was not granted adequate time to fully prepare and defend his client.

IV.

The district court's only objective in disbarring Collie was to enforce its order that she or her client pay monetary sanctions to reimburse Vought its costs and attorney's fees in defending unwarranted actions. The district court's disbarment order expressly stated that, in order to enforce its monetary sanctions order, it was necessary to bar Collie from practice until the sanctions had been paid in full. The district court did not

12

expressly or implicitly find that Collie was unfit to practice law. On the contrary, the court specifically permitted Collie to continue to represent clients in five particular cases. Moreover, the court fully reinstated Collie to practice when it received notice that she had paid the sanctions in full. Consequently, because the only goal of the district court's disbarment order has been fully attained, and all of the underlying litigation has been finally resolved, the proper disposition of this case is to reverse and vacate the district court's order disbarring Collie. See Ruffalo, 390 U.S. at 551-52; Robinson, 86 U.S. (19 Wall.) at 512; Thalheim, 853 F.2d at 389-90; Shrimsher (Butts), 493 F.2d at 845.

## Conclusion

Accordingly, this court renders judgment that the district court's order disbarring Noemi Alessandra Collie is REVERSED and VACATED.

JERRY E. SMITH, Circuit Judge, dissenting:

I respectfully dissent from the majority's reversal of the suspension order.[1] Although the district court initially violated Collie's procedural due process rights by failing to give her a hearing before ordering her suspension, that violation was cured by the subsequent hearing before the chief judge. Moreover, I would find that the chief judge did not abuse his discretion in ordering Collie suspended from practice before that court until her sanctions were paid.

## I.

I agree with the majority that the district court's failure to give Collie a hearing

---

[1] Although I am uncomfortable with the majority's justiciability analysis, the issue is foreclosed by binding circuit precedent, and thus we are obliged to reach the merits. *See Walker v. City of Mesquite*, 129 F.3d 831, 832 (5th Cir. 1997).

prior to her suspension was constitutionally infirm because due process requires that an attorney be given notice and an opportunity to be heard before he is suspended or disbarred, not after. The majority and I part company, however, when it comes to whether the district court successfully cured that violation through the subsequent hearing before the chief judge. It is well established that "a procedural due process violation is not complete 'unless and until the State fails to provide due process.' In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation" become actionable. *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (quoting *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)).[2]

The relevant question, therefore, becomes whether the "subsequent due process hearing was sufficient to cure the defect." *Best v. Boswell*, 696 F.2d 1282, 1288 (11th Cir. 1983). The majority offers two reasons for answering this question in the negative. First and foremost, it relies on cases holding that procedural due process requires an antecedent hearing to deprivation. Secondarily, the majority finds that the chief judge's hearing was flawed because Collie did not receive adequate notice.

Unfortunately, the majority's primary justification for rejecting the later hearing has nothing to do with the cure doctrine. Rather, it concerns what constitutes a procedural due process violation in the first instance. I reiterate that I do not disagree with the majority that Collie was entitled to a hearing before suspension. Had she, for instance, suffered some distinct, quantifiable harm for the period between deprivation and

---

[2] In the usual manifestation of the "cure doctrine," not present in this case, the plaintiff would be able to recover damages from the governmental actor only for that period between his deprivation without process and the subsequent sufficient due process hearing. *See, e.g.*, *Wheeler v. Mental Health & Mental Retardation Auth.*, 752 F.2d 1063, 1070 (5th Cir. 1985). Because Collie alleges only the harm of "stigma" (the monetary sanction having been affirmed in an earlier appeal), and because I find the chief judge's suspension orderSSand any accompanying "stigma"SSwere properly imposed, no relief is warranted.

14

hearing, she would be entitled to a remedy. *But see supra* note 2.

But the majority appears to hold that a hearing subsequent to suspension can never act as a cure because the cure comes after the deprivation. The very definition of a "cure," however, is a procedurally sufficient hearing that comes after a procedural due process violation has occurred, that is, after the deprivation has taken place. For this reason, the cases that the majority cites, *see, e.g.*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542-48 (1985), are inapposite, for they deal with what constitutes a procedural due process violation in the first instance and do not implicate the analytically distinct doctrine of a cure for such a violation once it has occurred.

The majority's secondary justification for rejecting the chief judge's hearing—lack of notice—does go to the adequacy of the cure. Unfortunately, here, the majority's conclusion is unsupported by the facts. Collie was given more than adequate notice of the September 6, 1996, hearing before the chief judge. By July 18, Collie knew of the charges against her and the fact that suspension was being considered. On July 29, she filed a request for a hearing before the chief judge, and she did so again on September 4. He granted her request that day and held the hearing on September 6.

Collie raised no objection prior to the hearing. She obviously knew it to be an evidentiary hearing, as she brought witnesses and asked to enter testimony.

At that point, Collie had had fifty days to prepare for an evidentiary hearing and to consider the nature of the charges against her and the appropriateness of the suspension. Under our caselaw, this amount of time is more than adequate notice for such proceedings. *See Childs v. State Farm Mut. Auto Ins. Co.*, 29 F.3d 1018, 1027 (5th

15

Cir. 1994) (attorney given seven hours notice prior to FED. R. CIV. P. 11 hearing.).

The hearing before the chief judge was also procedurally sufficient. Collie was able to present witnesses and to develop a record. At that point, the chief judge had "absolute discretion" either to follow the district judge's order or to chart a different course given his independent findings. *See* N. DIST. TEX. R. 13.2(b). In short, Collie was given an "effective opportunity to rebut" the charges against her. *Glenn v. Newman*, 614 F.2d 467, 472 (5th Cir. 1980).

## II.

The majority's analysis seems to be driven by its view that this suspension order was unwarranted. I disagree.

When a court imposes sanctions based on its inherent powers, they must be "essential to preserve the authority of the court" and must be the least severe sanctions adequate to achieve that end. *Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 411 (5th Cir. 1996) (internal citation and quotation marks omitted). "If there is a reasonable probability that a lesser sanction will have the desired effect, the court must try the less restrictive measure first." *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996).

To impose such sanctions, the court must make a specific finding that the attorney acted in "bad faith." *Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995). We review such a finding for abuse of discretion. *See Dawson v. United States*, 68 F.3d 886, 895 (5th Cir. 1995).

## A.

Collie's conduct meets the legal standard for imposing suspension. The chief judge, after a full and fair hearing, found that Collie "had willfully ignored [the district

16

judge's] orders." The chief judge found Collie's statement that she had "overlooked" the deadline unbelievable, because "it was a critical deadline," and "[s]he met one of those deadlines but not another." I see no ground for finding this factual determination clearly erroneous.[3] *See United States v. Jackson*, 19 F.3d 1003, 1007 (5th Cir. 1994) (citation omitted) (holding that credibility judgments are particularly within the province of the factfinder).

The chief judge, moreover, was justified in finding that suspension was the least severe action available to preserve the court's authority; forcing attorneys to comply with orders sanctioning them is essential to maintaining that authority. If an attorney fails to pay assessed sanctions, it is difficult to see how any sanction less than suspension can satisfy that end. Certainly, more monetary sanctions would be useless, especially when the attorney lacks the funds to pay them.

### B.

The majority's failure to recognize that before imposing suspension, the district court did "find that Collie was unfit to practice law," is also incongruent with the existing jurisprudence. Collie's failure to pay the sanctions made her unfit *per se* to practice law before the district court.

We have authorized the practice of forbidding a litigant from filing pleadings until he has satisfied a sanction, even if he is unable to pay.[4] We now should follow the Seventh and Tenth Circuits and hold that "[a] lawyer who is unwilling, or unable, to pay accumulated sanctions must desist from practice until he can follow the court's orders."

---

[3] In her brief, Collie admits that her failure to pay the fine was willful: Having insufficient funds, she never intended to satisfy the fine.

[4] *See, e.g., Smith v. Legg (In re United Markets Int'l, Inc.)*, 24 F.3d 650, 655-56 (5th Cir. 1994) (customary litigant); *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1034 (5th Cir. 1990) (attorney litigant); *Gelabert v. Lynaugh*, 894 F.2d 746, 748 (5th Cir. 1990) (per curiam) (prisoner litigant).

*In re Maurice*, 69 F.3d 830, 835 (7th Cir. 1995).[5]  Attorneys practicing before a court should be held to a higher, not lower, standard than are *pro se* litigants.

Unfortunately, the majority charts a different course.  In doing so, its ruling has the effect both of imposing stricter disciplinary requirements upon *pro se* litigants than upon attorneys, and of removing the only effective deterrent to an indigent attorney's flaunting of the district court's authority.  Accordingly, I respectfully dissent.

---

[5] *See Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 168 (7th Cir. 1997); *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam).  In *Maurice* and *Puig*, the attorney was given an opportunity to show cause why he should not be suspended.  In *Smith*, the attorney already had had such an opportunity at oral argument.