**David B. ROSENFELDT and Diane Rosenfeldt, Plaintiffs-Appellants,**

v.

**COMPREHENSIVE ACCOUNTING SERVICE CORPORATION et al., Defendants-Appellees.**

**No. 73–1957.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1975.

Decided April 11, 1975.

Gerald F. Munitz, Sheldon Engel, Chicago, Ill., for plaintiffs-appellants.

Thomas A. Mass, Edward L. Foote, Chicago, Ill., for defendants-appellees.

Before CLARK, Associate Justice,* HASTINGS, Senior Circuit Judge, and STEVENS, Circuit Judge.

STEVENS, Circuit Judge.

David B. and Diane Rosenfeldt, plaintiffs below,[1] seek review in this consolidated appeal of three separate interlocutory orders entered by the district court, respectively, on October 19, 1973, January 7, 1974, and June 20, 1974. We conclude that any controversy arising out of the only portion of the first order that is appealable is moot, and that neither the second nor the third order is appealable. Accordingly, we dismiss the appeals.

On October 19, 1973, the district court granted Comprehensive Accounting Service Corporation's Motion to Enforce Right to Possession of Property pursuant to its counterclaim against plaintiffs for payment of certain collateral notes and for breach of contract. Judge Perry ordered plaintiffs to deliver to Comprehensive all accounts/clients delivered by

---

* Associate Justice Tom C. Clark of the Supreme Court of the United States (Retired) is sitting by designation.

1. Rosenfeldts' six-count Complaint alleged that defendants induced them to enter into agreements and to execute and guarantee notes for the purchase of the service of procuring clients to build and expand an independent account-

ing practice, in violation of § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b–5, § 4 of the Clayton Act (15 U.S.C. § 15) and § 1 of the Sherman Act (15 U.S.C. § 1), § 5 of the Federal Trade Commission Act (15 U.S.C. § 45), the Illinois common law of fraud, and the Illinois Consumer Fraud Act (Ill.Rev.Stat.1973, ch. 121½, § 262A).

Comprehensive to plaintiffs together with all after-acquired customers and accounts receivable, all books, records, files and work papers relating thereto, and to cease soliciting, performing work for, and collecting fees from such clients, and restrained plaintiffs from instituting bankruptcy or other court proceedings that would interfere with the fulfillment of the terms of the order.

On January 7, 1974, the district court, after making findings of fact of Rosenfeldt's failure to comply with the October 19 order, held Rosenfeldt in contempt and sentenced him to serve a 90-day jail term and to pay a $1,000 fine. We subsequently denied Rosenfeldt's Application for Stay, but granted him leave to file a Motion for Reconsideration if the 90-day term was not totally vacated by the district judge upon the completion of a pending "good faith cooperation" hearing. On May 3, 1974, the district judge vacated both the jail term and the $1,000 fine.

On June 20, 1974, after taking further evidence of Rosenfeldt's lack of cooperation, the district court granted Comprehensive's amended Petition for a Rule to Show Cause and ordered Rosenfeldt to pay a fine of $47,259.08, the amount by which it found Comprehensive had been damaged by Rosenfeldt's "willful, wanton and malicious acts of contempt."

### I. Order of October 19, 1973

The agreement entered into between the parties provided, in pertinent part:

If the purchaser defaults in the payment of any one or more installments payable under this Agreement, the entire sum shall immediately become due and payable at the option of the seller, and the seller may retake possession and control of the clients and the accounts receivable accrued on all accounts delivered, in addition to any and all further accounts acquired by the purchaser, together with the books and records of the accounts.

The Motion to Enforce Right to Possession of Property filed by Comprehensive was, in effect, a petition for a writ of attachment or replevin, pursuant to Fed.R.Civ.P. 64. It was so treated by the parties and by Judge Perry. *See* Transcript of Proceedings on October 12, 1973, at 9, 22, 24–26, 38.

There are two possible theories under which we might have jurisdiction to review an order granting a writ of attachment, replevin or sequestration. First, as counsel for the Rosenfeldts argued orally before us, such an order might be viewed as an interlocutory order "granting, continuing, modifying, refusing or dissolving" an injunction within 28 U.S.C. § 1292(a)(1). Alternatively, the order might be deemed a "final decision" within the meaning of 28 U.S.C. § 1291 as interpreted by the Supreme Court in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, and Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206.

In this circuit it is clear that an order granting a writ of attachment is not deemed to fall within § 1292(a)(1). As we said in American Mortgage Corp. v. First National Mortgage Co., 345 F.2d 527, 528 (7th Cir. 1965):

The distinction between attachments and injunctions has been so long recognized that we are convinced that Congress would have provided for interlocutory appeals in cases such as this had it deemed such appeals desirable.[2]

---

**2.** There is some contrary authority. In Beefy King Int'l, Inc. v. Veigle, 464 F.2d 1102 (5th Cir. 1972), the plaintiff appealed from the release by the district court of some of the defendants' real property from a lis pendens. The court of appeals concluded that "the case should be treated in the same manner as a denial, dissolution, or modification of an injunction, all of which are appealable." *Id.* at 1104. It relied on the Florida lis pendens statute, which provided that "the court may control and discharge the notice of lis pendens as the court may grant and dissolve injunctions," and our decision in Suess v. Stapp, 407 F.2d 662 (7th Cir. 1969). As discussed below, however, that case stands for the proposition that the cancellation of a notice of lis pendens is a final order appealable under § 1291, and not that it is in essence a modification or dissolution of a preliminary injunction, appealable un-

■ Nor do we think that because portions of Judge Perry's order restrain future actions of Rosenfeldt with respect to the accounts, in addition to requiring that the tangible collateral be delivered to Comprehensive, the October 19, 1973, order is appealable under § 1292(a)(1). The Uniform Commercial Code provides those secured parties whose loans are secured by accounts and other intangible collateral the same rights to "enforce the security interest by any available judicial procedure." *See* Ill.Rev.Stat.1973, ch. 26, § 9–501(1). Thus, the portions of the district court order requiring Rosenfeldt to cease collecting fees from, or performing services for, certain accounts are the functional equivalents of a writ of attachment or replevin; their appealability is therefore also governed by *American Mortgage Corp.* We do not view those portions of the order as an independent preliminary injunction, the grant of which would, of course, be appealable pursuant to § 1292(a)(1).

■ Moreover, we do not believe an order granting a writ of attachment constitutes a final "collateral" order within the meaning of *Cohen.*[3] In *Swift,* decided during the term following *Cohen,* the Supreme Court held that an interlocutory order *vacating* an attachment was final and appealable under § 1291.

Appellate review of the order dissolving the attachment at a later date

would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible.

339 U.S. at 689, 70 S.Ct. at 865.

Justice Frankfurter, speaking for the unanimous Court, went on to note, however, that far different considerations are involved when the order is one *granting* an attachment.

The situation is quite different where an attachment is upheld pending determination of the principal claim. Such was Cushing v. Laird, 107 U.S. 69, 2 S.Ct. 196, 27 L.Ed. 391, which is urged on us. In such a situation the rights of all the parties can be adequately protected while the litigation on the main claim proceeds.

*Id.*[4]

■ The courts of appeals have recognized this distinction; when a district court has entered an order granting a writ of attachment, replevin, or sequestration, or refusing to vacate one, the order has not been deemed final under § 1291. United States v. Estate of Pearce, 498 F.2d 847, 849–850 (3rd Cir. 1974); Financial Services, Inc. v. Ferrandina, 474 F.2d 743, 745 (2d Cir. 1973); West v. Zurhorst, 425 F.2d 919, 920–921 (2d Cir. 1970); Flegenheimer v. General Mills, Inc., 191 F.2d 237, 239–240 (2d Cir. 1951). When, however, a petition for a

der § 1292(a)(1). *See also* the dissenting opinion of Judge Gibbons in United States v. Estate of Pearce, 498 F.2d 847, 850–851 (3rd Cir. 1974).

3. As 'explained by Professor Moore, in *Cohen,* "the Supreme Court held that an order that denied a defendant pretrial security for expenses and attorneys' fees was an appealable final decision because (1) it presented a serious and unsettled question of law; (2) it could not be reviewed effectively on appeal from the final judgment because by then the defendant's right to security would have been lost; and (3) the claim to the right of prejudgment security was separable from the cause of action." 9 J. Moore, Federal Practice ¶ 110.13[5], at 170 (1973).

4. In Cushing v. Laird, 107 U.S. 69, 76, 2 S.Ct. 196, 201, 27 L.Ed. 391, the Court had concluded:

"In a court of admiralty, as in a court of common law, a process of foreign attachment is auxiliary and incidental to the principal cause. Second Rule of Practice in Admiralty, 3 How. iii. Manro v. Almeida, 10 Wheat. 473 [6 L.Ed. 369]; Atkins v. The Disintegrating Company, 18 Wall. 272 [21 L.Ed. 841]. Neither the principal defendant nor the garnishees can appeal until after a final decree against them. The first decree against these garnishees, ascertaining their liability, was interlocutory only, and, if the libellants had ultimately failed to recover judgment against the principal defendant and execution against the garnishees, would have been of no avail to the libellants, and of no effect against the garnishees. The appeal of the garnishees from this interlocutory order of the District Court was therefore rightly dismissed by the Circuit Court, and the order of dismissal must be affirmed."

writ has been denied, or a previously entered order issuing such a writ has been vacated, appellate jurisdiction under § 1291 has been found to exist. American Oil Co. v. McMullin, 433 F.2d 1091, 1096 (10th Cir. 1970); Suess v. Stapp, 407 F.2d 662, 663 (7th Cir. 1969); Baxter v. United Forest Products Co., Inc., 406 F.2d 1120, 1123–1125 (8th Cir. 1969), cert. denied, 394 U.S. 1018, 89 S.Ct. 1635, 23 L.Ed.2d 42; Chilean Line Inc. v. United States, 344 F.2d 757, 759 (2d Cir. 1965). *Contra,* 21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement System, 404 F.2d 31, 33 (5th Cir. 1968).

 Thus, neither § 1292(a)(1) nor § 1291 authorizes an appeal from those portions of the October 19, 1973, Order requiring Rosenfeldt to turn over and otherwise to cease interfering with the collateral. However, the portion of the district court order that restrained the plaintiffs from instituting an action in the bankruptcy court was a preliminary injunction within the meaning of § 1292(a)(1) and was therefore appealable. In our order of December 13, 1973, however, we vacated those parts restraining plaintiffs from filing a petition for voluntary bankruptcy. Consequently, any further consideration of such restraint is unnecessary as any appeal from this portion would now be moot.[5]

## II. Order of January 7, 1974

 Rosenfeldt has appealed from the January 7, 1974, Order finding him in contempt of court, committing him to the custody of the Attorney General of the United States for a period of 90 days, and fining him $1,000. The imposition of the jail sentence and penalty was

stayed for 30 days pending a hearing to determine Rosenfeldt's good faith compliance with the order of October 19, 1973. We subsequently denied Rosenfeldt's application for a stay of the January 7 Order, without prejudice to the filing of a Motion to Reconsider if the district court did not vacate the jail term at the completion of the good faith compliance hearing.

On May 3, 1974, the district court vacated the 90-day jail sentence and the $1,000 fine without prejudice. Thus, no sanction was imposed on the basis of the January 7 Order, and it was, in effect, totally superseded by the Order of June 20, 1974. It is clearly not appealable and may be reviewed at this time only if the appeal from the June 20 Order is properly here.

## III. Order of June 20, 1974

On May 10, 1974, Comprehensive filed its Amended Petition for a Rule to Show Cause, and Supplementary Petition for Other Relief against Rosenfeldt, alleging that, in addition to his actions prior to January 7 in violation of the court's Order of October 19, 1973, Rosenfeldt "has continued his willful and malicious acts and omissions with the intent to injure Comprehensive. . . ." It further alleged that as a result of Rosenfeldt's "contemptuous violation of this Court's prior orders," it had suffered actual damages in the amount of $35,565.20, and had been required to expend additional sums for attorney's fees and costs.

At the close of a four-day hearing, the district judge reconfirmed and readopted the findings of fact and conclusions of law contained in his January 7, 1974, Order, and found that, in the period since January 7, Rosenfeldt, "[i]nstead of

5. The fact that we did have jurisdiction to consider this latter portion of the order does not mean that we must or should review the entire order. The oft-stated federal policy against piecemeal appeals (*see* American Mortgage Corp. v. First National Mortgage Co., *supra,* at 528) has led to the following general rule:

"Even where an interlocutory order such as an injunction has been properly appealed and other incidental orders or questions non-appealable in themselves are sought to be

reviewed, it must be remembered that the appellate court will usually review only that part of the order which relates to the injunctive relief afforded or denied and only those questions basic to and underlying the specific order which supports the appeal." 9 J. Moore, Federal Practice ¶ 110.25[1] at 272 (1973).

Once we had vacated the interlocutorily appealable portion, any justification for reviewing the order of attachment evaporated.

purging himself from contempt, . . was in fact guilty of further contempt of the court by willfully continuing to fail and to refuse to carry out the prior orders of the court." He concluded that "David B. Rosenfeldt's willful, wanton and malicious acts of contempt have resulted in damages to Comprehensive Accounts [sic] Service Corporation in the amount of $47,259.08," [6] and ordered Rosenfeldt to pay a fine in that amount to Comprehensive.[7]

■ In determining the appealability of this order, we must first determine the nature of the contempt involved—civil or criminal. The test for distinguishing between the two has long been established:

It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.

Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797. *See also* Fox v. Capital Co., 299 U.S. 105, 108, 57 S.Ct. 57, 81 L.Ed. 67. In *Gompers,* the Court noted that the relief sought by the petition is "significant and determinative" in this respect, 221 U.S. at 448, 31 S.Ct. 492; "if it had prayed that the court impose a fine payable to the Buck's Stove & Range Company, the language would have left no doubt that remedial punishment was sought." *Id.* at 449, 31 S.Ct. at 501.

■ In this case there can be no doubt that the fine imposed by the district court was civil in nature. Comprehensive's amended Petition for Rule to Show Cause sought the fine "as and for

its actual damages." The court's Order awarded the fine in an amount equal to the court's calculation of Comprehensive's actual damages, based on Comprehensive's evidence during the four-day hearing.

Having concluded that Rosenfeldt is appealing from an order imposing civil contempt sanctions, the rule is clear that such an order is not final within the meaning of 28 U.S.C. § 1291 and, therefore, is not appealable. As the Supreme Court held in Fox v. Capital Co., *supra:*

The rule is settled in this Court that except in connection with an appeal from a final judgment or decree, a party to a suit may not review upon appeal an order fining or imprisoning him for the commission of a civil contempt. Doyle v. London Guarantee & Accident Co., Ltd., 204 U.S. 599, 27 S.Ct. 313, 51 L.Ed. 641; In re Christensen Engineering Co., 194 U.S. 458, 24 S.Ct. 729, 48 L.Ed. 1072; Hayes v. Fischer, 102 U.S. 121, 26 L.Ed. 95; Worden v. Searls, 121 U.S. 14, 25, 7 S.Ct. 814, 30 L.Ed. 853.

299 U.S. at 107–108, 57 S.Ct. at 58. *See also* International Business Machines Corp. v. United States, 493 F.2d 112, 117 (2d Cir. 1973), cert. denied, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774; Hughes v. Sharp, 476 F.2d 975 (9th Cir. 1973); S. E. C. v. Naftalin, 460 F.2d 471, 475 (8th Cir. 1972); Hodgson v. Mahoney, 460 F.2d 326, 328 (1st Cir. 1972); Fireman's Fund Ins. Co. v. Myers, 439 F.2d 834, 838 (3rd Cir. 1971); Southern Railway Co. v. Lanham, 403 F.2d 119, 124 (5th Cir. 1968); Duell v. Duell, 85 U.S.App.D.C. 78, 178 F.2d 683, 687–688 (1949).[8]

Rosenfeldt argues, however, that the penalty imposed was in fact a criminal sanction for two reasons. First, he notes that the Order stated:

---

**6.** Defendant's Summary Exhibit 16 showed the value of Rosenfeldt's immediately transferable clients as of the October 5, 1973, audit as $86,638.86. The value of these accounts actually released to Comprehensive was $39,379.78. The difference, $47,259.08, was the amount awarded by the trial judge.

**7.** The Order stated that this amount "included" the $1,000 fine ordered on January 7,

1974, and subsequently vacated on May 3, 1974.

**8.** We recognize that in Sibbach v. Wilson & Co., 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479, and Bethlehem Mines Corp. v. U. M. W., 476 F.2d 860 (3rd Cir. 1973), courts heard interlocutory appeals from civil contempt judgments without any discussion of their appellate jurisdiction.

The court hereby imposes a fine in the amount of $47,259.08 upon David Rosenfeldt on account of said contempt, *including the $1,000.00 fine originally imposed upon him.* (Emphasis added). From the emphasized language, he concludes that a portion of the fine was intended to be punitive rather than remedial. We cannot agree. The district court's Order of May 3, 1974, vacated both the jail sentence and the $1,000 fine imposed January 7. In his June 20 Order, however, the trial judge apparently forgot that he had vacated the fine, for his summary of the proceedings only mentioned the vacating of the jail term. Thus, he obviously intended the $47,259.08 fine to supersede this provision of the earlier Order. As demonstrated above in n. 6, the final amount of the fine was exactly equal to the amount the judge determined Comprehensive had lost on the immediately transferrable accounts. Had the fine included an additional $1,000, Rosenfeldt's argument might well have merit.

Second, Rosenfeldt argues that the fine was punitive because the district court awarded Comprehensive some $12,000 more than it had requested in its Amended Petition. Without reviewing the accuracy of the district judge's calculations, it is clear that he was attempting to determine the actual amount by which Comprehensive was damaged. He was unquestionably empowered to award Comprehensive the larger sum if the evidence introduced at the four-day hearing established Comprehensive's entitlement thereto. Fed.R.Civ.P. 54(c). For present purposes we must assume that the evidence supports the order.

Finally, Rosenfeldt relies on the Second Circuit's decision in New York Telephone Co. v. Communication Workers of America, 445 F.2d 39 (2d Cir. 1971), for the proposition that an unconditional civil contempt order may be interlocutorily appealable. He notes that Comprehensive has already begun to collect the fine and that there is no way he can purge himself by future conduct.

In *New York Telephone,* the court of appeals determined that it had interlocutory jurisdiction to review the imposition of fines on an international and local union and a union officer, on two grounds. First, the special circumstances of the case rendered the civil contempt order final. While the court noted that execution had issued immediately and that the defendants faced immediate and perhaps irreparable loss, it also found that virtually nothing remained of the case below. The only union practice against which the complaint sought relief had already ended. "Accordingly, our intervention by way of appeal runs no risk of disrupting the orderly course of proceedings below." 445 F.2d at 45. Indeed, it was precisely on this ground that the Second Circuit distinguished *New York Telephone* in its later decision in *International Business Machines, supra,* 493 F.2d at 117.

Such is not the situation in the case before us. Still remaining before the district court are the merits of both the plaintiffs' case and Comprehensive's counterclaim. A resolution of the tangled questions on the merits presented by these appeals might well "disrupt the orderly course of proceedings below." Nor does the fact, by itself, that Comprehensive is already executing on this judgment render the matter appropriate for interlocutory review. Rosenfeldt has not petitioned the district court for a stay of execution as far as the record before us discloses.[9]

**9.** A fine levied for civil contempt appears to be "final" for purposes of execution and yet not "final" within the meaning of the Federal Rules or the Judicial Code as far as appellate jurisdiction is concerned. Under these circumstances, none of the explicit provisions for stays set forth in Fed.R.Civ.P. 62 would seem to apply. *See* Redding & Co. v. Russwine Construction Corp., 135 U.S.App.D.C. 153, 417 F.2d 721 (1969), for an analogous situation. Nonetheless, we believe the district judge does possess the discretionary power to stay execution on such a judgment upon the filing of a supersedeas or compliance with other conditions pending the ultimate rendition of a "final decision" that would permit appellate review. The denial of such stay might well be appealable under *Cohen, supra,* even though the contempt order itself is not.

The second ground relied on in *New York Telephone* was that the civil contempt judgments were reviewable in connection with the appeal from an interlocutory order respecting an injunction under 28 U.S.C. § 1292(a)(1). Such is not the case here. As discussed in section I, *supra,* an interlocutory appeal from those portions of the October 19, 1973, Order that Rosenfeldt was subsequently found to have violated is not authorized by § 1292(a)(1). Thus, the special circumstances present in *New York Telephone* do not exist in this case, and the general rule against interlocutory review of civil contempt judgments dictates that we may not review the Order of June 20, 1974, at this time.

Accordingly, these three consolidated appeals are hereby dismissed.