# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 9, 2008

Charles R. Fulbruge III
Clerk

No. 07-10579

SECURITIES AND EXCHANGE COMMISSION

Plaintiff-Appellee

v.

RESOURCE DEVELOPMENT INTERNATIONAL; ET AL

Defendants

LAWRENCE J WARFIELD, Receiver

Counter Defendant-Appellee

v.

CHASE BANK NA

Counter Claimant

CHARLES KELLY OLSEN

Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:02-CV-605

Before JOLLY, GARZA, and ELROD, Circuit Judges.

PER CURIAM:[*]

This case is ancillary to a Securities and Exchange Commission enforcement proceeding against Resource Development International, LLC, and numerous other entities (collectively, "RDI") for violating federal securities laws by controlling and operating an illegal Ponzi scheme.[1] The United States District Court for the Northern District of Texas created a receivership estate for RDI's assets and appointed Lawrence Warfield, an appellee here, as receiver. In his capacity as receiver, Warfield traced $1,372,680.29 of RDI assets to Charles Kelly Olsen, appellant here; and the district court demanded that Olsen turn over these assets to the receivership estate. Olsen refused. The district court found Olsen to be in civil contempt of court, and he spent twenty-six months detained in the U.S. Marshals' custody while he continued to refuse either to turn over the assets or to provide an accounting of them to Warfield.

In November 2007, Warfield petitioned the district court to release Olsen from custody, concluding his incarceration had lost its coercive effect. The district court ordered Olsen released. Olsen remains in contempt of court, but no sanction attaches to his continuing contempt. Despite the absence of any continuing sanction, Olsen appeals from a May 2007 order in which the district court refused to purge his civil contempt. Olsen also challenges a default judgment against him that stems from the underlying litigation against RDI. We lack jurisdiction over both aspects of Olsen's appeal. Accordingly, we DISMISS.

I.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] SEC v. Resource Development Int'l, Docket No. 3:02-CV-0605 (N.D. Tex.). Charles Kelly Olsen, the appellant here, is a non-party to the SEC's proceeding against RDI.

In March 2002, the SEC filed a securities enforcement proceeding against RDI in which the SEC alleged RDI controlled and operated an illegal Ponzi scheme. The SEC requested, and the district court granted, that RDI's assets be placed in a receivership estate to safeguard them on behalf of the Ponzi scheme's defrauded investors. The district court appointed Warfield as receiver. Warfield assumed control over RDI's books and records within hours of receiving the district court's receivership order, and he used them to investigate the location of RDI's assets.

By July 2003, Warfield had accumulated records indicating that Olsen received $1,040,381 in RDI assets that originated from defrauded investors. On Warfield's motion, the district court ordered Olsen to turn over this sum to the receivership estate. Olsen did not comply with this order. Warfield continued to investigate the location of RDI's assets, and he was able to trace more RDI assets to Olsen. In May 2004, Warfield obtained a default judgment on behalf of the receivership estate against Olsen for $1,372,680.29. Warfield v. Byron et al., Civil Case No. 3:02-CV-1371 (N.D. Tex. May 26, 2004).

Olsen did not pay any of the money due. In March 2005, as part of the underlying litigation against RDI, Warfield and the SEC jointly filed for Olsen to show cause why the court should not hold him in contempt. The court granted the motion, and it scheduled the "show cause" hearing for the next month. Olsen attended the hearing, but he did not show sufficient cause for not complying with the court's orders to avoid contempt. The court remanded him into the custody of the United States Marshals Service, to be detained until he either turned over $1,372,680.29 to Warfield or provided Warfield with an accounting that traced "all transfers of Receivership Assets into, between, and out of accounts over which Mr. Olsen exercises control and provides bank documents showing such transfers . . . and showing that such funds are no longer in his possession or control . . . ."

Olsen arranged a deposition that May to purge himself of contempt, but his admissions in the deposition fell short of the court's conditions for his release. He admitted to having received RDI assets, but he neither turned over the funds nor provided Warfield with a full accounting of them. Over the next seventeen months, Olsen filed numerous motions to purge himself of contempt. The district court in each instance found that Olsen had not met either of its conditions to purge contempt, and it accordingly denied relief.

This appeal arises from a May 2007 contempt status hearing that the district court held for Olsen. At the hearing, Olsen argued he was unable to comply with the court's order to turn over $1,372,680.29 or to provide an accounting of it. The court issued an order continuing Olsen's contempt, and it remanded him back into the U.S. Marshals' custody. Olsen timely filed a notice of appeal. He requested, and received, several deadline extensions for filing his opening appellate brief; and he did not file it until January 2008.

In the meantime, Warfield reported to the district court that Olsen's incarceration had lost its coercive effect. The district court ordered Warfield released from incarceration in November 2007. The court did not purge Olsen of contempt, but neither did the court attach sanctions to Olsen's continuing contempt. Thus, though Olsen continues to be in civil contempt of court, no sanction attaches to his continuing contempt. Olsen persists in his appeal from the district court's May 2007 order continuing contempt despite the absence of any sanction.[2] Olsen appeals pro se.

## II.

Because Olsen appeals pro se, we construe his briefs liberally. Johnson v. Quarterman, 479 F.3d 358, 359 (5th Cir. 2007) (citing Haines v. Kerner, 404 U.S.

---

[2] Olsen also asks this court to vacate the district court's April 2005 order finding Olsen to be in contempt, the district court's March 2002 temporary restraining order, preliminary injunction, and order appointing temporary receiver. We will refer to these orders collectively as the district court's "past orders."

519, 520 (1972)). Construing Olsen's briefs liberally, he raises three issues on appeal: (1) whether the district court's May 2007 order continuing Olsen's contempt was proper, (2) whether several of the district court's past orders in the underlying litigation were proper, and (3) whether the district court's May 2004 entry of default judgment against Olsen in the case Warfield v. Byron et al. was proper. Though Olsen raises many arguments to support the substance of his challenges, we may not consider those arguments unless we properly may exercise jurisdiction.

We may not properly exercise jurisdiction over Olsen's challenges to the district court's past orders or to the default judgment entered against him in Warfield v. Byron et al., Civil Case No. 3:02-CV-1371 (N.D. Tex. May 26, 2004). "In a civil case . . . the notice of appeal . . . must be filed with the district clerk within 30 days after the judgment or order appealed from is entered." FED. R. APP. P. 4(a)(1)(A). The district court's entries of the orders from which Olsen appeals date to March 2002 and April 2005. The district court's entry of default judgment in Warfield v. Byron et al. dates to May 2004. Olsen did not file notice of the present appeal from the orders and default judgment until May 2007. His appeal is therefore untimely.

We also may not properly exercise jurisdiction over Olsen's challenge to the district court's May 2007 order continuing his contempt. Construing Olsen's briefs liberally, he argues this court may exercise jurisdiction because "sanctions were imposed and Appellant OLSEN was incarcerated for 26 months . . . ."[3] In

---

[3] In its entirety, this confused passage of Olsen's opening appellate brief states,

To get jurisdiction over Appellant Olsen, a summons is required to bring him into the court's jurisdiction. Petitions do not bring individuals into the court's jurisdiction. Appellant OLSEN has only been named in a petition. However, sanctions were imposed and Appellant OLSEN was incarcerated for 26 months, thereby giving him standing to appeal to this Court.

Though this passage appears on its face to address the district court's jurisdiction over

opposition to this court's exercise of jurisdiction, Warfield argues Olsen's appeal is moot because the district court superseded its May 2007 order continuing contempt with a contempt order in November 2007 to which no sanction attaches.[4] "The latest order, releasing Olsen from incarceration," Warfield asserts, "supersedes all prior orders related to Olsen's contempt and accordingly moots the prior sanctions." As authority for this line of argument, Warfield cites Rosenfeldt v. Comprehensive Serv. Corp., 514 F.2d 607, 611-12 (7th Cir. 1975) (Stevens, J.). For related support, Warfield also cites Spencer v. Kemna, 523 U.S. 1, 17-18 (1988).

Warfield's reliance on Rosenfeldt is misplaced, but Olsen's appeal nevertheless is moot. In Rosenfeldt, the U.S. Court of Appeals for the Seventh Circuit considered whether two contempt orders against a party to the underlying litigation were appealable. The first contempt order involved prison time and a fine, but the district court vacated the order before the contemnor served any of the sentence or paid any of the fine. The appellate court held the contempt order moot. 514 F.2d at 611. The second contempt order, which the court did not hold to be moot, was non-appealable because the order was civil in nature and the contemnor was a party to the underlying litigation. Id. at 612 (quoting Fox v. Capital Co., 299 U.S. 105, 107 (1936)). The Seventh Circuit's reasoning in Rosenfeldt is inapposite here because Olsen, unlike the appellant Rosenfeldt, spent twenty-six months in the U.S. Marshals' custody and is a non-party to the underlying litigation.

---

Olsen and Olsen's standing to appeal, to avoid waiver against a pro se litigant we construe the passage as raising an argument in favor of this court's jurisdiction over Olsen's appeal.

[4] Warfield also argues that the district court's order continuing Olsen's contempt was interlocutory and not appealable under 28 U.S.C. § 1291. We do not need to reach this issue to hold that Olsen's appeal is not properly before us, and we reserve judgment on the matter.

Nevertheless, Olsen's appeal from the district court's May 2007 order continuing contempt is moot. Though Olsen spent twenty-six months in the U.S. Marshals' custody, no sanction attaches to his continuing civil contempt. Olsen does not allege that the mere continuation of contempt, without sanction, injures him. Yet such an injury must exist for Olsen's appeal to present a case or controversy for this court to adjudicate. Cf. Spencer v. Kemna, 523 U.S. 1, 7 (1988) ("Once [a] convict's sentence has expired . . . some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained."). Because the district court's sanctions against Olsen have ended and he does not allege injury from his continuing contempt, we must either presume injury or dismiss the appeal.

We decline to presume that the district court's May 2007 order continuing civil contempt presents Olsen with "collateral consequences" sufficient to meet Article III's injury-in-fact requirement. To hold otherwise would put this court at odds with the U.S. Supreme Court's holding in Spencer. In Spencer, the Court declined to presume that collateral consequences adequate to meet Article III's injury-in-fact requirement resulted from a court's revocation of a convicted felon's parole. 523 U.S. at 14. As the Court reasoned, though the revocation of parole might affect an individual's "employment prospects, or the sentence imposed . . . in a future criminal proceeding," such "nonstatutory consequences" are insufficient to bring an appeal from the revocation of parole within the courts' Article III power because the consequences are "dependent upon [t]he discretionary decisions . . . made by an employer or a sentencing judge, which are not governed by the mere presence or absence of a recorded violation of parole. Id. at 13 (quoting Lane v. Williams, 455 U.S. 624 (1982) (internal quotation marks omitted)). The mere presence of a criminal conviction, by contrast, can disable an individual from engaging in certain business, holding

certain offices, voting in state elections, and serving as a juror. See, e.g., Carafas v. LaVallee, 391 U.S. 234, 237 (1968).

Similar to an order revoking parole, an order continuing civil contempt does not entail the kind of collateral consequences that a criminal conviction entails. See Port v. Heard, 764 F.2d 423, 427 (5th Cir. 1985) (conjecturing that, had criminal contemnors' contempt been civil in nature and "had confinement been the only sanction imposed, . . . the controversy would have ended when they purged themselves of the contempt or, for other reasons, were released from custody."). We therefore decline to presume an order continuing civil contempt, without sanction, yields collateral consequences sufficient to meet Article III's injury-in-fact requirement. Olsen's appeal from the district court's May 2007 order continuing his contempt is moot.

III.

For the foregoing reasons, Olsen's appeal is

DISMISSED.