FILED
01/31/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 14, 2019 Session

## PAMELA D. STARK v. JOE EDWARD STARK

**Appeal from the Circuit Court for Shelby County**
**No. CT-002958-18   Robert Samual Weiss, Judge**

———————————————————

### No. W2019-00650-COA-R3-CV

———————————————————

This is an appeal from an order finding the appellant in civil contempt and ordering her incarcerated until she agreed to remove a social media post.  The appellant was incarcerated for four hours before she purged herself of contempt by agreeing to remove the post.  On appeal, the appellant challenges the civil contempt finding.  Because the appellant has purged herself of civil contempt and was released from incarceration, we deem the issue moot and dismiss this appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Pamela D. Stark, Memphis, Tennessee, Pro Se.

Melissa C. Berry, Memphis, Tennessee, for the appellee, Joe Edward Stark.

### OPINION

### I.   FACTS & PROCEDURAL HISTORY

After a five-year marriage, Pamela Stark ("Wife") filed a complaint for divorce from her husband, Joe Stark ("Husband") on June 29, 2018.  Wife is an attorney and filed her complaint pro se.  Husband is a sergeant with the Memphis Police Department.

Tennessee Code Annotated section 36-4-106(d) states that when a petition for divorce is filed and served, the following temporary injunction is in effect against both parties:

(3) An injunction restraining both parties from *harassing*, threatening,

assaulting or abusing the other and from *making disparaging remarks about the other . . . to either party's employer*.

Tenn. Code Ann. § 36-4-106(d)(3) (emphasis added). The parties are permitted to apply to the court "for further temporary orders, an expanded temporary injunction, or modification or revocation of this temporary injunction." Tenn. Code Ann. § 36-4-106(d)(6).

Husband filed an answer and counter-complaint for divorce. Wife amended her complaint to add "interspousal tort" claims against Husband, including battery and intentional infliction of emotional distress. Wife alleged that she was injured during a physical altercation with Husband days before the complaint for divorce was filed.

On January 15, 2019, Husband filed a petition for a restraining order. Husband alleged that he had recently become aware of a Facebook post made by Wife on December 14, 2018, in which she publicly posted allegations regarding Husband and the alleged incident of domestic violence between them. Husband claimed that Wife's post also disparaged the Memphis Police Department and its investigation of the incident. Husband asserted that Wife's dissemination of these allegations in a public forum would cause him immediate and irreparable injury, including but not limited to loss of employment, demotion, or damage to his reputation within the department. As such, Husband asked the trial court to enter a restraining order directing Wife to remove the Facebook post and to cease and desist from making any future comments, orally or on social media, that might jeopardize his employment or impugn his reputation with the police department. Husband sought an award of attorney's fees incurred in bringing the petition for a restraining order.

Wife filed a response to the petition in which she alleged that her post was critical of the Memphis Police Department, not Husband. She also argued that the restraining order sought by Husband would infringe on her "constitutional rights." The trial court held a hearing on Husband's petition for a restraining order on February 7, 2019. At the outset, counsel for Husband explained that Husband was basically asking the trial court to extend the existing statutory injunctions to specifically address public posts on social media or communication with Husband's employer that would have a detrimental effect on his reputation or employment. Husband submitted as exhibits the Facebook post made by Wife and also an email Wife had sent to the mayor of Memphis about the incident. In the Facebook post, Wife claimed to be "a recent victim of domestic violence at the hands of a Memphis Police Officer," and she criticized the handling of the investigation. Husband testified that his co-workers at the police department saw the Facebook post before he did. He explained that he and Wife have many mutual friends on the social media site because Wife worked as a prosecutor. Husband testified that a special prosecutor from another city was appointed to conduct an investigation regarding the alleged incident of domestic violence involving him and Wife.

Wife's four-page email to the mayor likewise claimed that she was a victim of domestic violence at the hands of Husband and a victim of misconduct by the Memphis Police Department. She identified her husband by name and rank and described her version of the physical altercation between them and the events that followed. Wife asked the mayor to "look into this before it goes further." Husband testified that the city mayor is considered his ultimate boss and employer. He opined that Wife's social media post and email to the mayor constituted harassment and brought his reputation into question.

Wife did not testify but repeated her argument that she had an absolute right to criticize the police department. At the conclusion of the hearing, the trial judge informed Wife that the problem with her argument was the existence of the automatic injunction prohibiting her from "making disparaging remarks about the other [spouse] . . . *to either party's employer*." *See* Tenn. Code Ann. § 36-4-106(d)(3) (emphasis added). The trial judge acknowledged Wife's "freedom of speech" argument but emphasized that her email did not convey some general concern about police corruption but instead was in direct reference to Husband. He explained that the references to Husband were "off limits." The trial judge then orally ruled that the Facebook post had to be removed that same day and that Wife would not be permitted to make further allegations on social media or have communication with Husband's employer.

The following exchange occurred between the trial judge and Wife:

The Court: That post shall be removed today, and a mandatory injunction will go into effect that there will be no communication with employers. There is a special prosecutor involved in this case. That special prosecutor will deal with this Court. Whatever allegations have been made, we'll deal with that in due course. But at this point involving making any further allegations in social media is completely inappropriate and is being enjoined.

Ms. Stark: Well, Your Honor, I will just with all candor to the Court say you might as well take me into custody right now. I have contacted the FBI as well as having contacted the mayor of Memphis to try and get this addressed. I am saying that I am a victim of corruption from the Memphis Police Department, and I am going to pursue every course of action I have and –

The Court: Ms. Stark, are you going to remove that post, yes or no?

Ms. Stark: I am not.

- 3 -

The Court: Officer Houston, take her into custody.
We'll stand in recess.

(Short break.)

The Court: Ms. Stark, please stand. Are you going to comply with this Court's orders?

Ms. Stark: No, I'm not.

The Court: All right. I'm making a finding that you are in direct contempt of court by willfully refusing to comply with this Court's orders. You will be held in the -- you will be held in custody until such time that you decide that you want to change your position and you apologize to this Court. We'll stand in recess until that time.

Wife was held in custody for four hours before she agreed to remove the Facebook post and was released.

Thereafter, the trial court entered its written order granting Husband's petition for a restraining order. The trial court entered a separate written order finding Wife in direct civil contempt. The order states that at the end of the hearing on the petition for a restraining order, "in open Court, [Wife] advised that the Court may as well [] find her in Contempt as she was not going to take the Facebook post of December 14, 2018 down which had just been ordered." The court noted that it then asked Wife directly whether she was going to abide by the court's order, to which she responded, "No." As such, the order states, the trial court found Wife in direct contempt of court, and she was immediately taken into custody. According to the order, Wife was ordered to be held in custody until she agreed to remove the Facebook post, and after being held in custody for four hours, she agreed to remove the post as ordered. Therefore, the written order states that Wife had already purged her contempt. Wife timely filed a notice of appeal.

## II. ISSUES PRESENTED

Wife presents the following issues, which we have slightly restated, in her brief on appeal:

1. Whether the trial court erred by issuing a restraining order involving matters which were not subject to adjudication or final judgment in the pending divorce and interspousal tort case before the court;

- 4 -

2.      Whether the trial court erred in finding sufficient proof under Tennessee Rule of Civil Procedure 65.04 to establish either a right or an immediate and irreparable injury, loss, or damage to warrant the restraining order;

3.      Whether the trial court erred in issuing a restraining order without employing the proper constitutional analysis associated with Wife's infringed rights;

4.      Whether the trial court erred in conducting summary contempt proceedings to impose sanctions for direct civil contempt; and

5.      Whether the trial court erred in imposing contempt sanctions before the court's order was actually violated.

In his posture as appellee, Husband asserts that Wife's issues on appeal must be limited to those challenging the contempt order, not the restraining order entered in the context of the underlying divorce action, which remains pending in the trial court.

## III.  DISCUSSION

At the outset, we address the issue raised on appeal by Husband.  Husband argues that Wife has only perfected an appeal from the order of contempt, and therefore, the issues she can raise on appeal must be limited to those presenting proper challenges to the contempt order.  We agree with Husband in this regard.

"Contempt proceedings are sui generis and are incidental to the case out of which they arise." *Baker v. State*, 417 S.W.3d 428, 435 (Tenn. 2013) (citing *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 474 (Tenn. 2003)).  The term "sui generis" means "[o]f its own kind or class; unique or peculiar." *Black's Law Dictionary* (11th ed. 2019). "The contempt proceeding may be 'related to the underlying case but independent from it.'"  *Ballard v. Cayabas*, No. W2016-01913-COA-R3-CV, 2017 WL 2471090, at *2 (Tenn. Ct. App. June 8, 2017) (quoting *Green v. Champs-Elysees, Inc.*, No. M2013-00232-COA-R3-CV, 2014 WL 644726, at *7 (Tenn. Ct. App. Feb. 18, 2014)).

A contempt proceeding "often stems from an underlying proceeding that is not complete." *Doe*, 104 S.W.3d at 474.  However, "[a] judgment of contempt fixing punishment is a final judgment from which an appeal will lie." *Hall v. Hall*, 772 S.W.2d 432, 436 (Tenn. Ct. App. 1989) (citing *State v. Green*, 689 S.W.2d 189 (Tenn. Crim. App. 1984)).  A contempt judgment "becomes final upon entry of the judgment imposing a punishment therefore." *State ex rel. Garrison v. Scobey*, No. W2007-02367-COA-R3-JV, 2008 WL 4648359, at *4 (Tenn. Ct. App. Oct. 22, 2008) (citing *Green*, 689 S.W.2d at 190).  The contempt ruling must be appealed within thirty days. *Blakney v. White*, No. W2018-00617-COA-R3-CV, 2019 WL 4942436, at *4 (Tenn. Ct. App. Oct. 8, 2019). "'It matters not that the proceedings out of which the contempt arose are not complete.'"

*Moody v. Hutchison*, 159 S.W.3d 15, 31 (Tenn. Ct. App. 2004) (quoting *Green*, 689 S.W.2d at 190). "An order that imposes punishment for contempt 'is a final appealable order in its own right, even though the proceedings in which the contempt arose are ongoing.'" *Ballard*, 2017 WL 2471090, at *2 (quoting *Coffey v. Coffey*, No. E2012-00143-COA-R3-CV, 2013 WL 1279410, at *5 (Tenn. Ct. App. Mar. 28, 2013)).

Here, Wife filed a notice of appeal within thirty days of the trial court's contempt order. Accordingly, she has properly perfected an appeal from the contempt order. However, the divorce case in which the restraining order was entered remains pending. In considering Wife's issues, we must bear in mind that this is an appeal from the contempt order, not an appeal from the restraining order. *See Garrison*, 2008 WL 4648359, at *4 (reviewing the contempt issues presented on appeal separately "as distinct from the remainder of the appeal" and dismissing the remainder of the appeal for lack of a final judgment).

Because this is an appeal from the contempt order, Wife is limited in her ability to raise issues regarding the restraining order. Wife argues that she can also challenge the restraining order, noting that one of the essential elements of a civil contempt finding is that the court order alleged to have been violated must have been a "lawful" order. *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 354 (Tenn. 2008). However, in this context:

> A lawful order is one issued by a court with jurisdiction over both the subject matter of the case and the parties. An order is not rendered void or unlawful simply because it is erroneous or subject to reversal on appeal. Erroneous orders must be followed until they are reversed.

*Id.* at 355 (internal citations omitted). For these reasons, we emphasize that the limited issue before this Court is whether the trial court erred by holding Wife in civil contempt.

The Tennessee Supreme Court has explained civil contempt as follows:

> Civil contempt is remedial in character and is applied when a person refuses or fails to comply with a court order. [*State v.*] *Beeler*, 387 S.W.3d [511, 520 (Tenn. 2012)]. A civil contempt action is brought to force compliance with the order and thereby secure private rights established by the order. *Overnite Transp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 510 (Tenn. 2005) (citing *Robinson v. Air Draulics Eng'g Co.*, 214 Tenn. 30, 377 S.W.2d 908, 912 (1964)). When a trial court orders imprisonment after finding civil contempt, the confinement is remedial and coercive in nature, designed to compel the contemnor to comply with the court's order. Consequently, compliance with the order will result in the contemnor's immediate release from confinement. *Id.* at 511. It has long

been said that in a civil contempt case, the contemnor "carries the keys to his prison in his own pocket." *State ex rel. Anderson v. Daugherty*, 137 Tenn. 125, 191 S.W. 974, 974 (1917).

*Baker*, 417 S.W.3d at 435-36.[1] "Beyond the 'civil' or 'criminal' classification, contempt is also categorized as 'direct' or 'indirect.'" *Id.* at 436 n.7. "Contempt can be further classified as direct or indirect depending on whether the misbehavior occurred in the court's presence." *In re Brown*, 470 S.W.3d 433, 443 (Tenn. Ct. App. 2015). "Direct contempt is based on acts committed in the presence of the court[.]" *Id.* at 443-44.

In the case before us, the trial court held Wife in direct civil contempt and ordered her incarcerated until she agreed to remove the Facebook post. Wife was in custody for approximately four hours before she agreed to remove the post and was released. Thus, Wife has purged herself of contempt.

This Court has repeatedly held that issues raised on appeal regarding civil contempt findings are moot if the contemnor has already purged himself or herself of contempt by the time the issue reaches this Court. "A case, or an issue in a case, becomes moot when the parties no longer have a continuing, real, live, and substantial interest in the outcome." *Hooker v. Haslam*, 437 S.W.3d 409, 417 (Tenn. 2014). For instance, in *Simpkins v. Simpkins*, 374 S.W.3d 413, 417 (Tenn. Ct. App. 2012), a husband was found in civil contempt for failure to pay health insurance premiums and failure to provide proof of life insurance. On appeal to this Court, the husband argued that the trial court erred by finding him in civil contempt without finding that he had the ability to comply with the orders he allegedly violated. *Id.* Because the husband had already "cured his contemptuous conduct" by paying the premiums and providing proof of insurance, we held that "the issue of civil contempt is moot." *Id.* at 418.

In *Pfister v. Searle*, No. M2000-01921-COA-R3-JV, 2001 WL 329535, at *2 (Tenn. Ct. App. Mar. 28, 2001), the trial court found a mother in civil contempt and ordered her jailed until she delivered the parties' child for visitation. The mother was released when the child was produced the next day. *Id.* at *4. On appeal, the mother argued that the evidence did not support a finding that she willfully violated the order because it was confusing. *Id.* We held that "because the [mother] complied with the court's order to produce her child, thereby purging her civil contempt, that judgment is now moot, and we decline to address it." *Id.* at *1. "The validity of the trial court's order finding her in civil contempt [was] moot." *Id.* at *4. *See also In re A.G.*, No. M2007-

---

[1] Unlike civil contempt, "[s]anctions for criminal contempt are generally both punitive and unconditional in nature, designed to punish past behavior, not to coerce directly compliance with a court order or influence future behavior." *Baker*, 417 S.W.3d at 436. Criminal contempt is often regarded as a crime. *Id.* "[W]hen a court imposes a definite term of confinement for conduct constituting criminal contempt, the contemnor cannot shorten the term by agreeing not to continue in the behavior that resulted in his confinement." *Id.*

0799-COA-R3-JV, 2009 WL 3103843, at *5 (Tenn. Ct. App. Sept. 28, 2009) (concluding that a mother's challenge to her sentence for criminal contempt was moot when she had already served the sentence and it was "unclear what meaningful relief lies within the power of this court to give her at this point"); *Boggs v. Boggs*, No. M2006-00810-COA-R3-CV, 2007 WL 2353156, at *5 (Tenn. Ct. App. Aug. 17, 2007) (deeming the appellant's arguments regarding two civil contempt findings moot where the appellant paid the amount ordered and was released from custody).

"Generally, whether a claim is moot involves a question of law that this Court will review de novo." *Huggins v. McKee*, 500 S.W.3d 360, 375 (Tenn. Ct. App. 2016) (citing *All. for Native Am. Indian Rights in Tenn., Inc. v. Nicely*, 182 S.W.3d 333, 338-39 (Tenn. Ct. App. 2005)). "The general rule remains that appellate courts 'should dismiss appeals that have become moot regardless of how appealing it may be to do otherwise.'" *Hooker*, 437 S.W.3d at 417 (quoting *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Co.*, 301 S.W.3d 196, 210 (Tenn. 2009)). However, even if a case may have become moot, "before dismissing it a court should consider whether to exercise its discretion to apply one of the recognized exceptions to the mootness doctrine." *Id.* The Tennessee Supreme Court has identified "a limited number of exceptional circumstances that make it appropriate to address the merits of an issue notwithstanding its ostensible mootness[.]" *City of Memphis v. Hargett*, 414 S.W.3d 88, 96 (Tenn. 2013). Those "exceptional circumstances" are:

> (1) when the issue is of great public importance or affects the administration of justice; (2) when the challenged conduct is capable of repetition and evades judicial review; (3) when the primary dispute is moot but collateral consequences persist; and (4) when a litigant has voluntarily ceased the challenged conduct.

*Id.* (citing *Lufkin v. Bd. of Prof'l Responsibility*, 336 S.W.3d 223, 226 (Tenn. 2011)).

The only exception arguably relevant in this case is "when the primary subject of the dispute has become moot but collateral consequences to one of the parties remain." *Hooker*, 437 S.W.3d at 417-18. This exception is "applicable in the court's discretion." *Id.* The court "may refrain from dismissing an appeal as moot when collateral consequences remain following the dismissal of the appeal." *Hudson v. Hudson*, 328 S.W.3d 863, 865-66 (Tenn. 2010). This exception to the mootness doctrine applies if "prejudicial collateral consequences" are shown to exist. *Id.* at 866. "Such collateral consequences can include the continued effect of an order that has expired or is invalid." *Id.*

In the case at bar, members of this Court asked Wife at oral argument why this appeal should not be dismissed as moot when Wife had purged herself of contempt and been released from incarceration. Wife argued that the issue of contempt was not moot

- 8 -

because (1) the contempt finding was a "blight" on her record, (2) the contempt finding might be used against her in the divorce trial, and (3) an issue of attorney's fees had been reserved in the trial court.

We begin with her argument regarding attorney's fees. In *Dockery v. Dockery*, No. E2009-01059-COA-R3-CV, 2009 WL 3486662, at *2 (Tenn. Ct. App. Oct. 29, 2009), we considered whether a husband's appeal challenging his contempt conviction was moot when he had already completed his jail sentence. In addition to the jail sentence, the husband was also ordered to pay the wife's attorney's fees. *Id.* *2 at n.2. As such, we held that his "entire appeal" was not moot, but any challenge to the length of his sentence was moot because it no longer presented a justiciable controversy. *Id.* at *2 n.2, *10. Unlike *Dockery*, however, the trial court in this case did not order Wife to pay Husband's attorney's fees in connection with the finding of contempt. As we noted in a related appeal of a recusal motion Wife filed in this case, "Following the trial court's oral ruling on the motion for restraining order, Wife essentially invited the trial court to find her in contempt after stating that she would not follow the trial court's order." *Stark v. Stark*, No. W2019-00901-COA-T10B-CV, 2019 WL 2515925, at *10 (Tenn. Ct. App. June 18, 2019). Thus, Husband never filed a petition for contempt or sought attorney's fees in connection with contempt. The trial court's order granting Husband's petition for a restraining order reserved a ruling on his request for attorney's fees *in connection with his request for a restraining order*. As a result, it is not necessary to address the contempt finding on appeal due to any outstanding issue regarding attorney's fees, which was present in *Dockery*.

Wife's arguments regarding the "blight" on her record and the possible use of the contempt order in the divorce trial are likewise unconvincing.[2] Another panel of this Court rejected a similar argument in *Bradford v. Bradford*, No. 86-262-II, 1986 WL 2874, at *2 (Tenn. Ct. App. Mar. 7, 1986). The appellant was no longer incarcerated under the court's contempt order but insisted that the issues on appeal were not moot because he "may continue to suffer consequences as a result" of the contempt finding. *Id.* The appellant argued that the contempt finding might be used against him in a custody matter or a subsequent contempt proceeding. *Id.* We found that argument "highly speculative." *Id.* This Court was "not persuaded that the finding of contempt may still have 'some practical effect' in the future which would keep defendant's case from being moot." *Id.*

Additionally, in *State v. Jenkins*, No. C/A 157, 1989 WL 124950, at *1 (Tenn. Ct. App. Sept. 13, 1989), an individual was held in contempt for failure to submit to paternity blood testing but purged himself of contempt by submitting to the blood test. On appeal, we held that "[his] challenges to the contempt order are moot since no meaningful relief can be rendered." *Id.* Quoting a case from Maryland, the dissenting judge in *Jenkins*

---

[2] This was a short-term marriage with no children, and neither party requested alimony.

suggested that the issue was not moot because the contempt order would remain in court records "for all to see." *Id.* at *2. Although recognizing that the contempt order "may not ever be utilized" and that its "effect beyond mere existence is not known, and may be none," the dissent took the position that the mere existence of a contempt order was enough to give substance to the appeal. *Id.* However, the majority opinion was to the contrary. Thus, Tennessee courts have not recognized the type of vague and speculative interests asserted by Wife as sufficient "prejudicial collateral consequences."[3]

Absent a showing by Wife of specific prejudicial collateral consequences resulting from the trial court's finding of contempt, we decline to apply the collateral consequences exception to the mootness doctrine. *See Hudson*, 328 S.W.3d at 866 (dismissing an appeal as moot because the father "ha[d] not shown that we should refrain from dismissing his appeal as moot" by describing "prejudicial collateral consequences necessary to invoke this exception to the mootness doctrine").

## IV.  CONCLUSION

For the aforementioned reasons, this appeal is dismissed. Costs of this appeal are taxed to the appellant, Pamela Stark, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

---

[3] We recognize that in some jurisdictions, special exceptions have been created in cases involving attorneys held in criminal contempt. *See, e.g., Johnson v. State*, 306 Ga. App. 844, 846 (2010) (explaining the general rule that an appeal of a criminal contempt order is moot upon the contemnor's release from jail, but in Georgia, "an exception to this rule has been made in cases involving an attorney"); s*ee also Nakell v. Attorney Gen. of N. Carolina*, 15 F.3d 319, 322-23 (4th Cir. 1994) (distinguishing a case involving "a layperson not subject to professional discipline" from one involving an attorney who could face possible discipline as a result of a criminal contempt conviction); *Matter of Betts*, 927 F.2d 983, 988 (7th Cir. 1991) ("In the case of an attorney convicted of criminal contempt of court, the conviction may have collateral consequences, such as action by the state attorney registration and disciplinary authority.")

However, a civil contempt order "does not entail the kind of collateral consequences that a criminal conviction entails." *S.E.C. v. Res. Dev. Int'l*, 291 F. App'x 660, 665 (5th Cir. 2008); *see also U.S. v. Johnson*, 801 F.2d 597, 600 (2d Cir. 1986) (stating that collateral legal consequences "are difficult to establish as to a civil contempt"). The Florida Court of Appeals declined to dismiss an attorney's appeal of a *criminal* contempt conviction as moot in *Keezel v. State*, 358 So. 2d 247, 248-49 (Fla. Dist. Ct. App. 1978), recognizing the "adverse legal consequences" flowing from the criminal conviction. However, the Court declined to apply the same rule to an attorney who was only found in *civil* contempt in *O'Connor v. O'Connor*, 415 So. 2d 902, 903 (Fla. Dist. Ct. App. 1982), deeming his appeal moot. The Court distinguished *Keezel* and found its reasoning "not persuasive in this civil contempt matter, wherein the appellant is an attorney." *Id.* at n.1. Here, Wife was only held in civil contempt, rather than criminal contempt, and she did not present any argument on appeal regarding the possibility of disciplinary action, so we decline to find any collateral consequences based on her status as an attorney.

- 10 -